[No. B198798. Second Dist., Div. Seven. Feb. 23, 2009.]

NIHAD ALSHAFIE et al., Plaintiffs and Appellants, v.
M. LAWRENCE LALLANDE, SR., et al., Defendants and Respondents.

## COUNSEL

Law Offices of Howard A. Kapp and Howard A. Kapp for Plaintiffs and Appellants.

Nemecek & Cole, Jonathan B. Cole, Jon D. Robinson and Mark Schaeffer for Defendants and Respondents M. Lawrence Lallande, Sr., and Perona, Langer, Beck, Lallande & Serbin.

Michael F. Sisson, in pro. per.; Law Offices of Michael F. Sisson and Michael F. Sisson for Defendant and Respondent Richard L. Garrigues and Michael F. Sisson.

Richard L. Garrigues, in pro. per., for Defendant and Respondent Richard L. Garrigues.

## OPINION

**PERLUSS, P. J.**—Nihad Alshafie, on his own behalf and as guardian ad litem for his daughter Heba Alshafie, appeals from the judgment entered after

his legal malpractice action was dismissed because Nihad,[1] who lives out of state, failed to post an undertaking to secure an award of costs. Because the trial court failed to follow a procedure that ensured Nihad received a full and fair hearing on the question whether he could afford to post a bond, we reverse and remand for a new determination of Nihad's financial condition.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The First Medical Malpractice Action*

Nihad's wife Sana had given birth to a child in 1988 by Caesarian section. Pregnant again in 1997, Sana elected to have a vaginal delivery of her child after being informed of the risks of doing so, including the risk of a uterine rupture, following an earlier Caesarian delivery.

Sana, who had received prenatal care at Daniel Freeman Maternity Center, an entity affiliated with University of California, Los Angeles, and the Regents of the University of California (Regents), went to Daniel Freeman Hospital on June 10, 1997 for a scheduled induction of labor. On June 11, 1997, more than 24 hours after she had first been given medication to induce labor, Sana had not yet given birth. At 1:30 p.m. it was noted, among other things, the baby's heart rate was slow and Sana was experiencing vaginal bleeding. The medication was discontinued, and Sana was prepared for an emergency Caesarian section. After the surgery began at 1:55 p.m., the doctors discovered Sana had a uterine rupture and Heba was floating in the peritoneum. Heba was born with severe brain damage.

On June 11, 1998 Richard Garrigues filed a medical malpractice action on behalf of the Alshafies against Daniel Freeman Hospital and the delivering physician, Dr. Rodney Wright. In June or July 1999 Garrigues retained Dr. Pamela Boyer, board certified in obstetrics and gynecology, to review the medical records in the matter. Dr. Boyer concluded the care and treatment provided by the hospital employees to Sana and Heba did not fall below the standard of care or cause Heba's brain damage. Consequently, Garrigues made a tactical decision not to oppose the hospital's August 1999 motion for summary judgment. Garrigues, however, appeared at the hearing on the motion to ensure judgment was entered only in favor of the hospital, so the action could proceed against Dr. Wright. In January 2000 the Alshafies

---

[1] We refer to Nihad Alshafie, his wife Sana Alshafie and his daughter Heba Alshafie by their first names not out of disrespect but for convenience and clarity. (*Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 188, fn. 13 [14 Cal.Rptr.3d 917].) Moreover, although plaintiffs in this action are both Nihad in his individual capacity and Heba as represented by Nihad as her guardian ad litem, we will generally refer only to Nihad when discussing the prosecution of the action.

discharged Garrigues and retained new counsel, Lawrence Lallande, Sr. On May 25, 2000 Lallande dismissed the medical malpractice action without prejudice.

### 2. *The Second Medical Malpractice Action*

In June 2001 Lallande introduced the Alshafies to Gerald Agnew, Jr., who associated as counsel to assist with a second medical malpractice action. The new malpractice lawsuit was filed on August 14, 2001 against Dr. Wright and the prenatal care physicians. Agnew consulted with Dr. Michael Friedman, a board certified obstetrician and gynecologist, who advised Agnew he believed the treatment provided by the hospital, its nurses and Dr. Wright did not fall below the standard of care or cause Heba's injuries. Agnew also consulted with Dr. Jeffrey Greenspoon, a board certified obstetrician and gynecologist, as well as a maternal fetal medicine specialist who Agnew anticipated would be the Alshafies' expert witness. Greenspoon also concluded there was no negligence by anyone involved in the care given to Sana and Heba.

Agnew and Lallande advised Sana and Nihad they believed there was no merit to the lawsuit. In a letter dated February 28, 2003 Lallande reiterated his concerns about the case and sought authorization to settle the matter for any sum obtainable or to negotiate a dismissal for a waiver of costs. Sana and Nihad signed the authorization on March 5, 2003. Subsequently, Agnew was able to obtain an offer from the Regents, which had stipulated all of the doctors involved in Sana's prenatal care and the delivery of Heba were its agents or employees, to settle the case for $150,000. Nihad, however, refused to accept the settlement.

In September 2004 the Cochran Law Firm replaced Lallande and Agnew as counsel. Work done by that firm suggested Heba had been the victim of nursing malpractice (contrary to the conclusion of the prior experts)—the purported failure of the nursing staff to appreciate the significance of readings from the fetal monitor strips and the consequent delay in notifying the treating obstetrician of any problems. When the Regents moved for summary judgment on November 12, 2004, Nihad filed a nonopposition stating, "The expert evaluation of this case concluded that the negligence that resulted in [Heba's] injuries was done by the nursing staff at Daniel Freeman Hospital, Maternity Clinic. As stated in the Moving Papers, on August 27, 1999 the Defendant Daniel Freeman filed a Motion for Summary Judgment. For some unknown reason, no Opposition was filed by plaintiff. On September 24, 1999, the Order grant[ed] the Motion with no opposition or appearance by plaintiff. That Order held that the 'healthcare providers at Daniel Freeman,' which would include the nursing staff, had met their burden of proof for the granting of the motion. [¶] Plaintiff concedes that no further action exists

against The Regents of the University of California or the University of California Los Angeles Medical Center." Judgment was entered in favor of the Regents on February 1, 2005.

### 3. *The Legal Malpractice Action*

On August 12, 2005 Nihad filed a legal malpractice action against his former attorneys—Lallande and his firm, Perona, Langer, Beck & Lallande (the Lallande defendants); Agnew and his firm, Agnew & Brusavich (the Agnew defendants); and Garrigues and his partner, Michael Sisson, and their firm Garrigues & Sisson (the Garrigues defendants). On June 28, 2006 Nihad filed a third amended complaint asserting claims for negligence, breach of fiduciary duty and intentional infliction of emotional distress.

The third amended complaint alleged the Garrigues defendants failed to learn the basis of the medical malpractice underlying Heba's injuries, failed to conduct any discovery and failed to oppose the hospital's motion for summary judgment. With respect to the Lallande defendants and the Agnew defendants, the third amended complaint alleged they knew, but failed to advise the Alshafies, of the basis for a legal malpractice action against the Garrigues defendants; they knew, but failed to inform the Alshafies, the defendants in the second medical malpractice action could not be found liable due to the collateral estoppel or res judicata effect of the first action; and they failed to take steps to set aside the grant of summary judgment in the first action, instead prosecuting the case knowing it was futile.

### 4. *The Trial Court's Order Granting the Motions for Imposition of an Undertaking*

Because the Alshafies had moved to Virginia, in September 2006 the Agnew defendants and Lallande defendants filed motions, joined by the Garrigues defendants, for imposition of an undertaking to secure an award of costs pursuant to Code of Civil Procedure section 1030.[2] After receiving two continuances Nihad filed an opposition on November 22, 2006 and belatedly filed (three days before the hearing) a declaration asserting he could not afford to post an undertaking. Nihad stated his family, which now included three children, lived in a rented apartment; he was a tow truck dispatch manager; Sana did not work outside of their home because she took care of the children; he could not "afford any additional expenses beyond [their] current living expenses and the extraordinary expenses required for Heba," who could not "speak, walk, feed herself, or in any manner care for herself"; he had "no tangible assets on which to secure an undertaking bond"; and

---

[2] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

"[a]ny requirement to pay money to post a bond for costs in this case would pose an unbearable and impossible financial hardship and preclude further litigation of this case."

The trial court granted the motions in the aggregate amount of $159,312.50: $92,155 for the Lallande defendants' anticipated costs, $29,875 for Garrigues's anticipated costs and $37,282.50 for Sisson and Garrigues & Sisson's anticipated costs. (The Agnew defendants had been voluntarily dismissed from the action by this time; the remaining defendants will be referred to collectively as the attorney defendants.) With respect to Nihad's declaration, the court stated, "Counsel for plaintiffs also refers to plaintiff's own declaration regarding indigency pursuant to *Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1432 [110 Cal.Rptr.2d 72] but . . . no such declaration was timely submitted. On 11.27.06 three days before the hearing, plaintiffs filed a declaration of Nihad Alshafie without explanation for the delay. The plaintiff's declaration is conclusory regarding indigency as there are no facts to support the indigency statement such as tax returns, receipts or other substantive documentation. In plaintiff's cited case of *Baltayan v. Estate of Getemyan*, the appellate court found that the trial court did not act arbitrarily or capriciously when it ordered a bond despite the fact that plaintiff therein provided tax returns, holding that the tax returns were incomplete."

### 5. *Dismissal of the Legal Malpractice Action*

After Nihad failed to file the required undertaking, the Lallande defendants moved to dismiss the action; the Garrigues defendants joined the motion. In opposition Nihad filed a new declaration providing more specific information to support his claim of indigency: "1. I am financially unable to pay and/or bond the undertaking costs in this matter. [¶] 2. My annual income is approximately $20,000.00. In addition Heba receives $639.00 per month for Social Security Disability Income. [¶] 3. My family—Sana (wife and mother), Ashraf (17 year old son), Heba (9 year old disabled daughter), Noor (2 year old daughter), and myself live in a rented town home for $1,700.00 per month. [¶] 4. I have $4,000.00 in savings account and $300.00 in a checking account. I do not have any retirement accounts. [¶] 5. We own three (3) cars—1999 Ford Explorer (Ashraf's car), 1997 Mercury Moutaineer (my wife Sana's car), and 1992 Pontiac Bonneville (my car). [¶] 6. I do not have any friends and/or relatives that are [in] a financial position to pay or bond the undertaking costs in this matter. [¶] 7. We are unable to move back to California because of access to health care. Heba's treating physicians and local hospital [are] walking distance from our home."

The trial court dismissed the action, finding, "Plaintiffs' arguments and contentions simply reargue the merits of the court's order granting the motion

requiring the undertaking." The court further stated, "[T]he declaration of plaintiff Alshafie regarding his alleged indigency cannot be properly considered since [it does] not properly comply with the requirements of [section] 1008." Nonetheless, the court also appeared to evaluate the merits of the declaration, stating, "Plaintiff's declaration reflects that his monthly rent is higher than his reported income on which he supports his five member family and three vehicles.[3] The court notes that Alshafie's declarations remain conclusory and lacking in the required facts to establish the alleged indigency."

## DISCUSSION

### 1. *The Law Governing Undertakings by Out-of-state Plaintiffs*

■ Plaintiffs who reside outside of California may be required to post an undertaking to ensure payment of costs to a prevailing defendant. Section 1030, subdivision (a), provides, "When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding." ■ The plaintiff, however, will not be required to file an undertaking unless "there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding." (§ 1030, subd. (b).) If the plaintiff fails to file an undertaking after the court determines the grounds for the motion have been established, the plaintiff's "action or special proceeding shall be dismissed as to the defendant in whose favor the order requiring the undertaking was made." (§ 1030, subds. (c) & (d).)

■ "The purpose of the statute is to enable a California resident sued by an out-of-state resident ' "to secure costs in light of the difficulty of enforcing a judgment for costs against a person who is not within the court's jurisdiction." ' [Citation.] The statute therefore acts to prevent out-of-state residents from filing frivolous lawsuits against California residents." (*Yao v. Superior Court* (2002) 104 Cal.App.4th 327, 331 [127 Cal.Rptr.2d 912].) Although a previous version of section 1030 was found unconstitutional because it failed to "provide a meaningful pretaking hearing" (*Gonzales v. Fox* (1977) 68 Cal.App.3d Supp. 16, 18 [137 Cal.Rptr. 312]), the revised statute, which

---

[3] The court apparently failed to include Heba's Social Security disability income in evaluating the credibility of the family's reported income and expenses.

provides for a hearing,[4] "violates neither federal nor state due process guarantees because the 'statutory hearing procedure is the one usually prescribed for pretrial motions, that is, the opportunity to present declarations and other documentary evidence, the opportunity for both counsel to be present, and the opportunity to be heard.' " (*Yao*, at p. 331.)

Even if the defendant establishes the grounds for an undertaking, the trial court may waive the requirement if the plaintiff establishes indigency. Section 995.240, which "codifie[d] the common law authority of the courts" (Cal. Law Revision Com. com., 18 West's Ann. Code Civ. Proc. (2009 supp.) foll. § 995.240, p. 169), provides, "The court may, in its discretion, waive a provision for a bond in an action or proceeding and make such orders as may be appropriate as if the bond were given, if the court determines that the principal is unable to give the bond because the principal is indigent and is unable to obtain sufficient sureties, whether personal or admitted surety insurers. In exercising its discretion the court shall take into consideration all factors it deems relevant, including but not limited to the character of the action or proceeding, the nature of the beneficiary, whether public or private, and the potential harm to the beneficiary if the provision for the bond is waived." (See also *Baltayan v. Estate of Getemyan, supra*, 90 Cal.App.4th at p. 1433 (*Baltayan*) ["[w]here the plaintiff establishes indigency, a trial court has discretion to waive the posting of security under [§] 1030"].)

The public policy underlying an indigent's entitlement to a waiver of security costs is essentially "access trumps comfort." (*Baltayan, supra*, 90 Cal.App.4th at p. 1442 (conc. opn. of Johnson, J.).) "In ruling indigents are entitled to a waiver of security for costs, [the State is] saying one party's economic interest in receiving its costs of litigation should it win cannot be used to deny an indigent party his fundamental right of access to the courts." (*Ibid.*; see *Cruz v. Superior Court, supra*, 120 Cal.App.4th at p. 185 (*Cruz*) [" '[r]estricting an indigent's access to the courts because of his poverty . . . contravenes the fundamental notions of equality and fairness which since the earliest days of the common law have found expression in the right to proceed in forma pauperis' "].)

### 2. *This Court's Decision in* Baltayan

This court's 2001 decision in *Baltayan, supra*, 90 Cal.App.4th 1427, in which we reversed the dismissal of an action for failure to post an undertaking, is the necessary starting point for evaluating the trial court's orders in

---

[4] Section 1030, subdivision (c), states, "If the court, after hearing, determines that the grounds for the motion have been established, the court shall order that the plaintiff file the undertaking in an amount specified in the court's order as security for costs and attorney's fees."

this case. The plaintiff, Gagik Baltayan, was an out-of-state resident injured in an automobile accident. The defendants moved for an undertaking pursuant to section 1030. The trial court initially continued the motion because the parties were engaged in an arbitration. Following an award for the defendants, Baltayan filed a timely request for a trial de novo; and the defendants renewed their motion for an undertaking. Baltayan did not oppose the motion on its merits, arguing only that the trial court had agreed to hear the motion at the trial setting and status conference scheduled about three weeks after the noticed hearing date. Neither Baltayan nor his attorney appeared at the hearing. The court granted the motion and ordered Baltayan to post a $22,000 undertaking in 10 days. (*Baltayan*, at pp. 1430–1431.)

Before the 10 days had expired, Baltayan filed a motion for relief on the grounds, among others, he was indigent, requiring him to post the undertaking would violate his right to equal protection and 10 days was an insufficient amount of time. (*Baltayan, supra*, 90 Cal.App.4th at pp. 1431–1432.) To support his claim of indigency, Baltayan filed a declaration stating he had no savings, neither he nor his wife owned real property and his family's income was the same as that reflected on the attached copies of the two prior years' federal income tax returns ($15,150 and $14,248). However, "[t]he attached tax return copies were incomplete because they indicated business income requiring completion of schedule C, but did not include a copy of that schedule." (*Id.* at p. 1434.)

The trial court granted Baltayan an additional 15 days to post the undertaking, but otherwise denied any relief. Baltayan failed to post the undertaking within the extended time. Thereafter, the defendants moved to dismiss the action. Baltayan opposed the dismissal, noting he had recently obtained an order relieving him of the obligation to pay court fees and costs and arguing that, because he was now in forma pauperis, the court was required to waive the undertaking. The court granted the defendants' motion to dismiss. (*Baltayan, supra*, 90 Cal.App.4th at p. 1432.)

Reviewing the trial court's decision whether to waive the requirement an out-of-state plaintiff post an undertaking under an abuse of discretion standard, this court upheld the trial court's initial order denying Baltayan relief, in large part because of suspicions raised by the documentation Baltayan had submitted: "[Baltayan] relied primarily upon the copies of his tax returns to show low income, but apparently deliberately omitted from each return schedule C. The schedule would have revealed the actual business gross receipts of the business and the amount claimed as deductible business expenses. In addition, [Baltayan's] declaration did not address whether his wife had any savings, nor did it deny ownership of assets other than real property, e.g., jewelry, artwork, equipment or cars that might be used as

collateral to secure the bond. [Baltayan] likewise did not address whether he or his wife had a friend or relative who would be willing to either post a cash bond or pay the premium on a surety bond. [Citation.] Nor did [Baltayan] or his attorney show that they had made any unsuccessful effort to obtain an undertaking. Counsel's declaration merely stated that he had 'inquired of several bond companies as to the procedure for obtaining' the required undertaking, but did not show any actual attempt to obtain it. [¶] Moreover, [Baltayan's] arbitration brief, which he attached to his motion for relief, showed a spending level that reasonably cast doubt upon appellant's indigency claim." (*Baltayan, supra*, 90 Cal.App.4th at pp. 1434–1435.) Nevertheless, we reversed the trial court's dismissal of the action after Baltayan had obtained in forma pauperis status, holding, "[G]iven the finding of indigency necessarily underlying the in forma pauperis order, the trial court acted arbitrarily and capriciously in refusing to either vacate or reduce the amount of the undertaking." (*Id.* at p. 1435.)

Justice Johnson, in a thoughtful concurring opinion tracing the history of in forma pauperis rights from their 15th century English origins, argued the issue was not one of discretion at all: Baltayan had an absolute right to a waiver, as a matter of law, once he had obtained in forma pauperis status. (*Baltayan, supra*, 90 Cal.App.4th at p. 1436 (conc. opn. of Johnson, J.) ["the trial court lacks discretion to impose a Code of Civil Procedure section 1030 security deposit requirement . . . once the judge determines [the plaintiff] is financially qualified for that in forma pauperis status and possesses a non-frivolous claim"].) Although Justice Johnson grounded his conclusion in "settled principles of California in forma pauperis law" and, accordingly, found it "unnecessary to present an exhaustive treatment of the constitutional issue," he nonetheless suggested dismissal of Baltayan's action "would be unconstitutional under the equal protection clauses of the United States and California constitutions—as applied to an out-of-state resident who was poor enough to qualify for in forma pauperis rights in California courts." (*Baltayan, supra*, 90 Cal.App.4th at pp. 1443, 1444–1445 (conc. opn. of Johnson, J.).)

3. *The Trial Court Abused Its Discretion in Granting the Motions for an Undertaking Without Providing an Adequate Hearing on Nihad's Financial Ability To Satisfy the Bond Requirement*

Because Nihad has not sought or obtained in forma pauperis status, permitting him to proceed in this litigation without payment of court fees and costs, the trial court's ultimate decision to grant or deny a waiver of the section 1030 security deposit requirement is reviewed under an abuse of discretion standard. (*Baltayan, supra*, 90 Cal.App.4th at p. 1434.) Nonetheless, a court's discretion must " 'be " 'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial

justice.' " [Citations.]' (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713].) Moreover, we carefully examine a trial court order finally resolving a lawsuit without permitting the case to proceed to a trial on the merits. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 [35 Cal.Rptr.2d 669, 884 P.2d 126]; see generally *People v. Ault* (2004) 33 Cal.4th 1250, 1266 [17 Cal.Rptr.3d 302, 95 P.3d 523] ['appellate review of trial court orders granting nonsuits, directed verdicts, or judgments notwithstanding the verdict—orders that finally terminate claims or lawsuits—is quite strict. All inferences and presumptions are against such orders'].)" (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1208–1209 [35 Cal.Rptr.3d 411].)[5]

■ In the first instance the "party seeking relief from the requirement of posting a bond or undertaking has the burden of proof to show entitlement to such relief." (*Williams v. Freedomcard, Inc.* (2004) 123 Cal.App.4th 609, 614 [20 Cal.Rptr.3d 220]; see *Baltayan, supra*, 90 Cal.App.4th at p. 1434 ["the plaintiff should make a prima facie showing that he has unsuccessfully attempted to obtain the required undertaking or that he is unable to furnish it"].) It is by no means certain, however, what the nature of that showing must be. On one end of the spectrum, a sworn statement of hardship that includes some financial information but no supporting documentation may be sufficient. For example, in *Hood v. Superior Court* (1999) 72 Cal.App.4th 446 [85 Cal.Rptr.2d 114], Division One of this court held—in a slightly different context, but, like here, with the potential of barring a litigant from the courthouse—a litigant's sworn declaration an order obligating him to pay discovery referee's fees would be a financial hardship and a statement of his income and expenses are sufficient to justify a fee waiver, absent something in the declaration giving the court reason to doubt its veracity. (*Id.* at pp. 449–450.) The court reversed the trial court's order requiring the litigant to provide documentation of his income, whether by tax records or other documents. (*Id.* at pp. 448–449; cf. *McDonald v. Superior Court* (1994) 22 Cal.App.4th 364, 370 [27 Cal.Rptr.2d 310] ["[The plaintiff's] personal declaration under penalty of perjury as to her financial condition and its impact on

---

[5] Contrary to the contentions of the Lallande defendants and Garrigues, Nihad did not forfeit the argument he is entitled to a waiver of the undertaking based on indigency by failing to raise it in a timely fashion in the trial court. In his opposition to the motions for an undertaking, Nihad argued the granting of the motions was discretionary, not mandatory, and asserted "in *Baltayan v. Estate of Getemyan*[, *supra*,] 90 Cal.App.4th 1427 . . . , it was held to be an abuse of discretion to grant such a motion where the plaintiff was impecunious. We are concurrently serving the declaration of the plaintiff demonstrating he is a tow truck dispatcher and sole provider for his family who owns no real property or any other property that can be used for this purpose: granting this motion, on this showing, would be itself an abuse of discretion and, in the words of the case, a 'miscarriage of justice.' " Although belated, Nihad in fact filed the promised declaration stating he did not have sufficient funds to obtain an undertaking.

her ability to proceed with the litigation was competent evidence. The court abused its discretion by its apparent failure to consider it in determining how discovery disputes should be handled."].)

On the other end of the spectrum, a party formally seeking in forma pauperis status to be relieved of paying specified court fees and costs, which we believe could include a section 1030 undertaking as an additional court fee or cost (see Cal. Rules of Court, rule 3.62(6)),[6] must complete a mandatory Judicial Council form (currently designated form FW-001) and provide the specified financial information.[7] (Rule 3.51(a); see *Cruz, supra,* 120 Cal.App.4th at p. 181 [discussing prior version of mandatory form].)[8] An applicant who is not receiving government benefits from certain public assistance and supplemental income programs or whose monthly income exceeds 125 percent of the current monthly federal poverty guidelines may nevertheless qualify to proceed in forma pauperis if his or her income is not sufficient to pay for court fees and costs as well as the common necessaries of life for the applicant and the applicant's family. (*Cruz,* at p. 181; Gov. Code, § 68511.3, subd. (a)(6).) In such a case, the applicant must complete the section of form FW-001 requiring disclosure of detailed financial information, including all sources of income for the applicant and any family members living in the home who depend in whole or part on the applicant for support; interests in property such as cash, checking and savings accounts, vehicles and real estate; and monthly expenses such as rent, food, household supplies, clothing, medical, child care and transportation. (See *Cruz,* at pp. 181–182.)

If an applicant "fail[s] to provide the information required by the application form or if the court has good reason to doubt the truthfulness of the factual allegations in the application," the applicant may be required to submit additional documentation. (Rule 3.53(b); see *Cruz, supra,* 120 Cal.App.4th at p. 182.) However, "[i]f the applicant is required to submit additional documentation of his or her financial condition, the court or person authorized under (a) must: [¶] (1) Inform the applicant of the information in the application that is insufficient or that the court believes may not be truthful; [¶] (2) Inform the applicant of the specific type or types of documentation the applicant must submit; [¶] (3) Require the applicant to submit only documentation that the applicant has in his or her possession or

---

[6] References to a rule or rules are to the California Rules of Court.

[7] Government Code section 68511.3, subdivision (a), instructed the Judicial Council to "formulate and adopt uniform forms and rules of court for litigants proceeding in forma pauperis." Effective July 1, 2009 Government Code section 68511.3 is repealed and replaced by Government Code section 68630 et seq., concerning waiver of court fees and costs. (See Stats. 2008, ch. 462, § 2.)

[8] Effective July 1, 2009 many of the provisions regarding waiver of fees and costs now contained in rules 3.50 to 3.63 are incorporated into statute, Government Code section 68630 et seq. (See Stats. 2008, ch. 462, § 2.)

can obtain with reasonable efforts; and [¶] (4) Require the applicant to submit only enough documentation as is necessary to clarify or prove the truthfulness of the factual allegations in the application." (Rule 3.53(b); see *Cruz*, at p. 182.) The court must conduct a confidential hearing if it "determines that there is substantial evidentiary conflict concerning the applicant's eligibility to proceed in forma pauperis" (rule 3.58(a)); however, "[i]n some instances the financial information submitted by the applicant may conclusively demonstrate his or her lack of entitlement to a fee waiver without raising a 'substantial evidentiary conflict' " and thus no hearing need be held before denial of the application. (*Cruz*, at p. 187.)[9]

■ As this court held in *Baltayan, supra*, 90 Cal.App.4th at page 1435, a plaintiff who has been granted in forma pauperis status has the right to a waiver of the undertaking. However, a plaintiff is not obligated to obtain in forma pauperis status to be entitled to a waiver of the section 1030 bond requirement. (*Conover v. Hall* (1974) 11 Cal.3d 842, 852 [114 Cal.Rptr. 642, 523 P.2d 682] [in forma pauperis application is not required before relief can be granted from statutory bond requirement]; cf. *McDonald v. Superior Court, supra*, 22 Cal.App.4th at p. 369 [in determining whether plaintiff was required to split discovery referee fees "same policy considerations apply where one party has financial resources far superior to an opposing party who, while not proceeding in forma pauperis, has clearly limited financial means"].) Under these circumstances, when the plaintiff has, for whatever reason, elected not to seek in forma pauperis status, there is no rigid standard for the requisite showing of indigency; and, as discussed, it ultimately remains within the court's discretion to determine whether to grant a waiver. (§ 995.240; see *Baltayan, supra*, 90 Cal.App.4th at p. 1443 (conc. opn. of Johnson, J.) ["Obviously the court had the power and the duty to determine whether a litigant, including appellant, is indigent and possesses a colorable claim, and thus is qualified for in forma pauperis relief. In that sense, it is a discretionary decision."].)

Certainly, however, a plaintiff seeking such a waiver would be well advised to provide the detailed financial information requested on the mandatory Judicial Council form for obtaining in forma pauperis status. Completing that form would provide the trial court with a solid basis for making the waiver decision and should reduce the likelihood of snarky questions similar to those raised by the attorney defendants in this case such as whether Nihad was being evasive when he stated he had "no tangible assets," thus arguably implying he might have "intangible assets" like interests in patents, copyrights, licenses, royalties or gains on the sale of stocks and bonds, and whether Nihad's statement Sana did not work "outside of her home" implied

---

[9] Effective July 1, 2009 verification of an applicant's financial condition is governed by Government Code section 68634, subdivision (e), rather than rules 3.53 and 3.58.

she may generate income from working in the home, in addition to the work of raising three children, including one so disabled that she cannot care for herself in any manner.

■ Because the range of information potentially relevant to the court's inquiry is virtually limitless, depending on the litigant's individual situation, we cannot identify with precision what a plaintiff who has not achieved in forma pauperis status must present to carry his or her burden of proof on this issue.[10] However, there is no obstacle to specifying the basic procedure the court must follow to ensure its discretion in determining whether a plaintiff is entitled to a waiver is " ' " 'exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " [Citations.]' " (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co., supra,* 133 Cal.App.4th at p. 1208.) Just as the plaintiff is well advised to provide the information requested in the mandatory Judicial Council form for applying for in forma pauperis status, to satisfy its obligation under section 995.240 to consider all relevant factors in deciding whether to waive the requirement of an undertaking, the court should follow the procedures set forth in rule 3.53(b)—or generally similar procedures—applicable when a litigant fails to provide the required information when requesting in forma pauperis status or when the information provided generates concerns about the applicant's financial situation. (See new Gov. Code, § 68634, subd. (e)(4), (5), eff. July 1, 2009, added by Stats. 2008, ch. 462, § 2.) That is, to fulfill its statutory duties when exercising its discretion, the court must review the plaintiff's showing, identify deficiencies, if any, and give the plaintiff the opportunity to supply additional information that may be necessary to establish his or her entitlement to a waiver under the circumstances of the particular case.[11] Only by taking such a proactive role can the trial court properly balance the respective rights of the parties while minimizing the

---

[10] Citing *Baltayan, supra,* 90 Cal.App.4th 1427, *Fuller v. State of California* (1969) 1 Cal.App.3d 664 [82 Cal.Rptr. 78] and *Williams v. Freedomcard, Inc., supra,* 123 Cal.App.4th at page 615 the attorney defendants contend a plaintiff must unsuccessfully attempt to obtain a bond before he or she may be granted a waiver of the section 1030 requirement for an undertaking. Neither *Baltayan* nor *Fuller* stands for such a categorical proposition; and, to the extent *Williams* does, we disagree with it. If it is apparent from the plaintiff's declaration and financial information that obtaining an undertaking would be impossible, the law does not require the futile act of attempting to do so. (See *Sutherland v. Barclays American/Mortgage Corp.* (1997) 53 Cal.App.4th 299, 313 [61 Cal.Rptr.2d 614] ["law did not require [party] to engage in futile or useless acts"]; Civ. Code, § 3532 ["law neither does nor requires idle acts"].) Similarly, although information concerning the unavailability of relatives or friends to provide the resources for a bond may be of interest, we are unaware of any basis—statutory or otherwise—for requiring a litigant to demonstrate that people outside his or her own household or nuclear family cannot assist in paying court fees or costs. Certainly, no such showing is required by the Judicial Council's mandatory forms.

[11] The parties disagree as to whose financial condition should be relevant to determine entitlement to a waiver in this case. Nihad argues it is only Heba's financial condition, and the

circumstances in which a potentially meritorious case is dismissed solely because the plaintiff cannot post an undertaking. (See *Baltayan, supra,* 90 Cal.App.4th at p. 1435 ["[D]ismissal of appellant's case resulted in a manifest miscarriage of justice. It effectively precluded appellant from litigating his claims simply because he is indigent and respondents proved a reasonable probability of success."].)

Indeed, as Justice Johnson observed, it is not just low-income plaintiffs who may be entitled to relief from the requirement of posting an undertaking, but also middle-income plaintiffs: "[C]ases . . . also support the proposition the [C]onstitution requires courts to scale the amount of the required security to the out-of-state plaintiffs' ability to pay. Thus, not only must the courts exempt poor people entirely, but they may have to reduce the security bond required for middle income litigants, as well. If the bond is set high enough to fully protect the in-state defendant, it may be higher than middle income out-of-state plaintiffs can afford—and thus deprive them of their day in court. This, most courts have concluded, is an unconstitutional construction of these statutes and requires the judge to lower the security required to a manageable level." (*Baltayan, supra,* 90 Cal.App.4th at p. 1445, fn. 34 (conc. opn. of Johnson, J.).)

■ In sum, because the court failed to provide a meaningful opportunity for Nihad to demonstrate his financial inability to post an undertaking and to address the court's concerns about the showing he had made, we reverse the order dismissing the legal malpractice action, as well as the order requiring Nihad to post an undertaking pursuant to section 1030. On remand the trial court is to conduct a new hearing on Nihad's request for a waiver of the undertaking requirement, consider all financial information submitted by Nihad as well as any other relevant factors, identify any deficiencies or omissions in the information submitted and provide Nihad an opportunity, in conformity with the procedures detailed in rule 3.53(b), to respond to the court's concerns. Based upon that information, and considering the arguments of all parties, the court is to exercise its discretion and determine whether a waiver, in whole or in part, is appropriate.

attorney defendants argue both Heba and Nihad's financial capabilities are relevant. The attorney defendants further contend nothing in Nihad's declaration addresses Heba's ability to post a bond.

Nihad's financial condition is clearly relevant because he brought suit not only as Heba's guardian ad litem but also in his individual capacity. Heba's financial ability is relevant as well. Although it is difficult to conceive, based on the evidence presented and the lack of any suggestion otherwise from the attorney defendants, who were presumably familiar with the Alshafies' finances, that Heba would have any financial wherewithal independent of Nihad (beyond her Social Security disability income), the court may direct Nihad to satisfy any doubt on this issue.

## DISPOSITION

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. Nihad is to recover his costs on appeal.

Woods, J., and Jackson, J., concurred.