Filed 10/10/23  Skilled Nursing Pharmacy v. Cal. Dept. of Industrial Relations CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| SKILLED NURSING PHARMACY, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF INDUSTRIAL RELATIONS et al., <br><br> Defendants and Respondents. | B310719 <br><br> (Los Angeles County Super. Ct. No. 20STCP01444) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Daugherty Lordan, Brendan T. Sapien; Lewis Brisbois Bisgaard & Smith, Steven G. Gately and Jana Lubert for Plaintiff and Appellant.

Department of Industrial Relations, Division of Labor Standards Enforcement and Patricia Salazar for Defendants and Respondents.

———————————

# INTRODUCTION

Skilled Nursing Pharmacy, Inc. (SNP) appeals from the dismissal of its petition for a writ of administrative mandate challenging a wage order imposed by the California Department of Industrial Relations (Department) for various Labor Code and wage order violations. The trial court dismissed the petition after SNP failed to post a bond required by Labor Code section 1197.1 as a condition for filing the petition. On appeal, SNP argues this was error because it was entitled to a waiver of the bond requirement under Code of Civil Procedure section 995.240,[1] which authorizes the trial court to waive a bond requirement upon a showing of indigency and inability to obtain a surety. SNP asserts the trial court abused its discretion when it denied its application for a bond waiver because it presented sufficient evidence it was indigent and the effects of the COVID-19 pandemic diminished the value of its assets, making it impossible to obtain a bond. We conclude SNP failed to demonstrate the trial court abused its discretion and affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Labor Commissioner Determined SNP Engaged in Labor Code and Wage Order Violations*

SNP is an "institutional pharmacy" for medical facilities. In March 2016 the Department's inspectors investigated alleged Labor Code and wage and hour order violations at SNP's facilities

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise provided.

in the City of Industry. As a result of the investigation, in August 2017, the California Labor Commissioner issued a wage citation to SNP for a claim period of August 2014 to April 2016 covering between 74 to 78 employees for, among other violations, unpaid minimum wages and overtime and double-time wages, and liquidated damages. The wage citation for the violations totaled $1,746,577.91.

SNP appealed the wage citation to the Labor Commissioner. After an administrative hearing in November 2018 the Labor Commissioner affirmed the wage order on March 6, 2020. On the same day, the Department served SNP with the decision: the "Notice of Findings, Findings, and Order on Wage Citation" (NOF).

The NOF informed SNP of its right to file a petition for a writ of mandate in the superior court: "The writ must be taken within forty-five (45) days of the mailing of this Notice. If you do not seek review of these findings, it may be filed and enforced as a judgment in an appropriate court of law." The Department also provided SNP with notice of the bond filing requirements in Labor Code section 1197.1, subdivision (c): "PLEASE TAKE NOTICE: As of January 1, 2017, Labor Code § 1197.1 requires the posting of a bond with the Labor Commissioner as a condition to filing a writ of mandate in superior court. The bond shall be in the amount equal to the total amount of any minimum wages, liquidated damages, and overtime compensation that are due and owing, but shall not include amounts for penalties."[2]

---

[2] SNP was required to post a bond in the amount of $1,036,373.00, representing $388,135.72 for minimum wage violations, $456,371.43 for liquidated damages under Labor Code

B.      *SNP's Writ Petition and Application To Waive the Bond Requirement*

On April 20, 2020 SNP filed its Verified Petition for Writ of Administrative Mandate, Prohibition, or Other Appropriate Relief (Petition).  Ten days later SNP filed its Application for Waiver of Labor Code Section 1197.1 Bond (Application).  In the Application, SNP claimed that, although it had tried to do so, obtaining a bond in excess of a million dollars was impossible because of the pandemic.

The only factual support for the Application was a one-page declaration from Ben Mandelbaum, identified as "an owner" of SNP, asserting SNP could not obtain a bond of $1,036,373 (Mandelbaum Declaration).  Mandelbaum attested that upon learning of the wage citation, SNP attempted to obtain the writ bond required by Labor Code section 1197.1.  He stated SNP contacted "multiple surety bond and underwriting companies," but was "expressly told" it would be "difficult" to obtain a bond "with credit markets tightening because of COVID-19."  He further declared that "compounding what became the clear impossibility of obtaining a bond, the pandemic's impact on the economy began to diminish the value of any potential [SNP] assets, which could otherwise be used as collateral."  Mandelbaum stated that "it became clear that a cash bond would be the only viable option to meet this Bond requirement," but

---

section 1194.2, and $191,865.86 in overtime and double-time wages.  Although the Labor Commissioner affirmed the wage citation in the amended amount of $1,745,914.39, the bond amount at issue is $1,036,373.00, which is the amount equal to unpaid minimum wages, overtime or double-time, and liquidated damages under the statute.

4

"[d]ue to the drastic and accelerated shutdown in the economy due to the pandemic, posting a cash Bond in the required amount of $1,036,373.00 was and is not possible. [SNP] does not have any cash on hand or similar liquid assets anywhere near that value." Mandelbaum concluded that "[w]ere [SNP] to post a Bond in the amount identified by the Order, [it] would have to shut down operations during this most critical time in the global pandemic." SNP did not support the Application or Mandelbaum's declaration with any facts regarding SNP's financial condition or its unsuccessful efforts to obtain a bond. Instead, SNP requested judicial notice of several articles from the Los Angeles Times describing the effect of the pandemic on the economy.[3]

On July 30, 2020 the trial court held a trial setting conference at which the Department made a special appearance because SNP had not yet served the Petition or the Application. The court directed the parties to stipulate to a briefing schedule, continued the conference, and set the hearing on the Application for October 13.

C.     *The Department's Opposition to the Application, SNP's Reply, and SNP's Ex Parte Application To Continue the Hearing*

On October 1, 2020 the Department made a general appearance filing its opposition to the Application. The Department argued SNP failed to establish its entitlement to a waiver of the bond requirement. First, the Department argued

---

[3]     The trial court denied judicial notice of these articles, and, on appeal, SNP does not challenge this ruling or renew its request for judicial notice.

5

that because SNP was a corporate entity and not a natural person, it could not demonstrate it was "indigent" under section 995.240. Second, it contended SNP did not prove indigency because SNP provided no evidence supporting Mandelbaum's conclusory statements SNP could not obtain a bond from a surety and had insufficient assets to post a cash bond. The Department argued SNP had access to assets that could be used to obtain a bond. It urged the court to consider that granting the waiver would negatively impact the workers whom the Labor Code violations had harmed.

In support of its opposition, the Department presented evidence of SNP's corporate status, assets, and the assets of SNP's owners, Mandelbaum and his wife, Michelle Mandelbaum, who was also an officer and director of SNP. The Department also presented evidence that while the Application was pending, in August 2020, SNP obtained a loan from VFI Corporate Finance, which provides direct lending to businesses.[4] In addition, the Department showed Mandelbaum and his wife were trustees of the "Mandelbaum Family 1998 Revocable Trust," which held title to a single-family residence in Los Angeles that, at the time the opposition was filed, had an estimated value between $4,250,575 and $4,677,743. The Department also

---

[4] In November 2018, shortly after the Labor Commissioner's administrative hearing on the wage citation, SNP converted into a limited liability company, SNP Pharmacy, LLC. Mandelbaum was identified as the manager of the limited liability company, which shares the same address as SNP, and Mandelbaum was identified as chief executive officer and/or president. Substantial evidence supports the trial court's implied finding these are the same entities. On appeal, the parties do not contend this change in SNP's corporate form affects our analysis.

6

presented evidence SNP conducted operations in Glendale at a property owned by "900 Western Ave LLC," itself owned and operated by Mandelbaum. The Department presented evidence that smaller properties in the same area as the Glendale property were listed for sale between $2,999,999 and $3,500,000 in October 2020.

On October 8, 2020 SNP filed an ex parte request to continue the hearing on the Application to effectuate service on the Department and to respond to the opposition. In opposing this request the Department argued, for the first time, the Application was untimely because SNP failed to file it before the Petition. The trial court continued the hearing to October 22 and gave SNP until October 13 to file a reply.

SNP's reply argued the Department ignored the effects of the pandemic and, without citing any authority, that the assets the Department raised in its opposition could not be considered because they were not accessible to SNP or under its control. In the event its Application was denied, SNP asked the trial court for 30 days from the date of the hearing "to attempt to post the bond in order to proceed with the Writ at issue."

D.  *The Trial Court Denied the Application, Ultimately Gave SNP 40 Days To Post the Bond, and Dismissed the Petition When SNP Failed To Post Bond*

On October 22, 2020 after hearing argument from the parties, the trial court denied the Application. The trial court first acknowledged its discretion under section 995.240 to waive the bond required under Labor Code section 1197.1, subdivision (c). Relying on *Williams v. FreedomCard, Inc.* (2004) 123 Cal.App.4th 609 (*Williams*), a published Second District,

7

Division Two opinion, the court determined SNP had not demonstrated it was entitled to relief from the bond requirement because indigence is a human condition that does not apply to a corporate entity like SNP.

The trial court found that, even if corporate entities could be indigent for purposes of relief from the bond requirement, SNP failed to establish it met the requirements for a waiver under section 995.240. The court determined the sole basis to support the claim of indigence, the Mandelbaum Declaration, "only provides conclusory and unsupported statements and offers no documentary evidence in support of its claim of indigency and inability to post a cash bond." The court found SNP had not shown it lacked access to assets to secure a bond, noting Mandelbaum, an owner of SNP, had substantial assets. The court ruled SNP failed to show Mandelbaum's assets should not and could not be used to post a bond for his company.

The court also found Mandelbaum's assertions SNP could not obtain a bond and the claimed impact of the pandemic on the company were undermined by evidence SNP obtained a loan from VFI Corporate Finance during the pandemic. The court further addressed SNP's argument about the pandemic at the hearing: "If I were to accept the bond waiver argument based on the COVID-19 pandemic, then that would mean there would be no bonds posted at all. Not just on waiver cases but on preliminary injunctions and anything else. That's just not acceptable. Yes, the pandemic has adversely affected businesses, some businesses much more than others. Although I'm not sure that a business that supplies medication is going to be all that adversely affected."

Finally, the court examined section 995.240's requirement that it consider the nature of the beneficiaries and the potential harm to them if the bond is waived. The court observed the beneficiaries included the 74 to 78 workers who had not received their minimum wages, liquidated damages, and overtime and double-time wages, as well as the Labor Commissioner who enforces minimum labor standards by investigating and issuing citations to employers.

The court then considered how much time SNP would have to post the bond. The Department opposed giving SNP any additional time, arguing SNP was required to post the bond or seek a waiver as a pre-condition to filing the Petition. The Department asserted SNP did not file its Application until after it filed the Petition and the failure to seek the waiver or post the bond before filing the Petition deprived the court of jurisdiction to consider its merits. In response, SNP's counsel argued the Department had not raised that argument in its written opposition to the Application or at any point until the ex parte proceedings in mid-October 2022. SNP asserted it had not been given an opportunity to address the jurisdictional argument. SNP's counsel represented SNP had attempted to file the Application before the Petition. But, according to counsel, the superior court clerk would not allow SNP to file the Application until after it filed the Petition, instructing SNP to file the Application after the Petition had a case number, and a judge was assigned.

The trial court agreed the jurisdiction issue was not properly before it and refused to deny the Application or dismiss the Petition on that basis. The court also observed it did not have authority to dismiss the Petition automatically based on its

denial of the Application for a bond waiver.  Instead, the court stated it would issue an order to show cause (OSC) as to why the Petition should not be dismissed.  The court further stated that if SNP posted a bond before the OSC, then the Department could seek to have the Petition dismissed on the ground SNP failed to seek the waiver or post the bond on a timely basis.

The trial court gave SNP until November 5, 2020 to post the bond.  On November 10 the trial court continued the OSC to December 1, effectively giving SNP 40 days from the denial of its Application to post the bond.

On December 1, 2020 during the OSC Re: Dismissal hearing, SNP informed the trial court it had not and would not post the bond.  As part of its oral motion to dismiss, the Department reasserted its jurisdictional argument.  The trial court dismissed the Petition, ruling the dismissal order was based only on SNP's failure to post the bond as required by Labor Code section 1197.1.  The court expressly stated it was not considering the Department's jurisdictional argument.

SNP subsequently appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

Labor Code section 1197.1 authorizes employers, like SNP, to seek judicial review of the Labor Commissioner's wage orders and findings that the employer violated the Labor Code.  (Labor Code, § 1197.1, subd. (c)(2) ["A writ of mandate may be taken from this finding to the appropriate superior court."].)  Subdivision (c)(3) of this statute further mandates, as a condition to filing a petition for writ of mandate, that the employer "shall

10

first post a bond with the Labor Commissioner [issued in favor of unpaid employees] equal to the total amount of any minimum wages, contract wages, liquidated damages, and overtime compensation that are due and owing."

A petitioner may ask the trial court to waive the statutory bond requirement. (*Conover v. Hall* (1974) 11 Cal.3d 842, 850-853; see also Code of Civ. Proc., § 995.240 [codifying common law authority recognized in *Conover*].) Specifically, under section 995.240, the court "may, in its discretion, waive a provision for a bond . . . if the court determines that the principal is unable to give the bond because the principal is indigent and is unable to obtain sufficient sureties, whether personal or admitted surety insurers. In exercising its discretion, the court shall take into consideration all factors it deems relevant, including but not limited to the character of the action or proceeding, the nature of the beneficiary, whether public or private and the potential harm to the beneficiary if the provision for the bond is waived." (§ 995.240; see *Li v. Department of Industrial Relations* (2020) 53 Cal.App.5th 877, 885-886 (*Li*).)

The party seeking relief from the bond requirement has the burden to show entitlement to such relief. (See *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421, 432 (*Alshafie*) [describing nature of showing for indigency claims]; accord, *Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1434 (*Baltayan*) ["the plaintiff should make a prima facie showing that he has unsuccessfully attempted to obtain the required undertaking or that he is unable to furnish it"].)

11

We review the trial court's denial of a waiver of the bond requirement for abuse of discretion. (*Alshafie, supra,* 171 Cal.App.4th at pp. 431-434; see *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154 ["'When applying the deferential abuse of discretion standard, "the trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious."' [Citation.] 'It is the appellant's burden on appeal to show the trial court abused its discretion.'"].) A court's exercise of discretion in declining to waive a bond requirement "will be disturbed on appeal only if the court exercised it in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice." (*Baltayan, supra,* 90 Cal.App.4th at p. 1434.) A "weak and incomplete showing of indigency" is sufficient to support a conclusion "the trial court did not act arbitrarily, capriciously or absurdly in denying [a] motion for relief from the undertaking." (*Id.* at p. 1435.)

B.    *Analysis*

SNP contends the trial court abused its discretion by denying the Application for a waiver of the bond requirement because the Mandelbaum Declaration—the only evidence it submitted—adequately demonstrated SNP was indigent and that it tried but was unsuccessful in obtaining a bond. SNP further asserts the court failed to consider the effect of the pandemic on its ability to obtain a bond, and that it should not have considered the assets of its owners. We affirm.

12

1. *The Trial Court Did Not Abuse Its Discretion by Denying SNP's Application To Waive the Bond Requirement*

The trial court's conclusion that SNP did not demonstrate indigency, as required by the first prong of section 995.240, was no abuse of discretion.

In *Williams, supra*, 123 Cal.App.4th at pages 614 to 615, Division Two of the Second District cast doubt on the notion that a corporate entity can claim indigency under section 995.240. In *Williams*, a natural person (Mr. Buford) and a corporation (FreedomCard) sought a stay of enforcement and a waiver of a bond under section 995.240. (*Williams*, at p. 612.) The appellate court confirmed that to obtain a waiver, the movants must demonstrate they were indigent and unable to obtain a bond or other surety. (See *id.* at pp. 614-615; see also § 995.240.) Regarding Mr. Buford, the court determined that, although he could seek relief under section 995.240, he simply "did not claim" indigency and was, therefore, not entitled to any relief. (*Williams*, at p. 612.) *Williams* then made the following observation: "[r]egarding FreedomCard, a corporate entity, it is well settled that a corporation is not a 'person' for the purposes of establishing indigency, at least in the analogous context of obtaining in forma pauperis status to dispense with federal requirements as to filing fees, costs and security." (*Id.* at pp. 615, citing *Rowland v. California Men's Colony* (1993) 506 U.S. 194, 203-206 (*Rowland*) [only natural persons may proceed in forma pauperis under federal statute].)

13

The trial court here applied *Williams* and ruled that because indigence is a human condition, and SNP is a corporate entity, SNP could not seek relief under section 995.240. On appeal, SNP cited no contrary authority. SNP does not address this point in *Williams* in its opening brief and, although the Department argued the point in its respondents' brief, SNP opted not to file a reply. SNP effectively conceded this point by failing to address it on appeal. (See *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 (*Christoff*) ["[A]n appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal."].) We could affirm on that basis alone. (See *Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 558 [appellant's failure to address the trial court's "ruling in its opening brief compels the conclusion the trial court's ruling on that point must be affirmed"].)

Whatever we may think of *Williams*, we need not reach the issue, and assume a corporate entity can claim indigency under section 995.240.[5] In all events, substantial evidence supports the trial court's finding SNP was not indigent. SNP's Application and supporting declaration lack specific information regarding SNP's financial condition. The trial court correctly assessed that

---

[5] We note the First District, in *Cardinal Care Management, LLC v. Afable* (2020) 47 Cal.App.5th 1011, 1019-1021 (*Cardinal Care Management*), considered whether two limited liability companies and their sole member, Steve Chou, were eligible for relief under section 995.240 from a bond requirement under Labor Code section 98.2. Although it cited *Williams*, the *Cardinal Care Management* court examined the moving parties' claim of indigence on the merits without addressing whether the corporate form of the two entities categorically precluded them from obtaining relief.

14

Mandelbaum's declaration provided only "conclusory and unsupported" statements and "offer[ed] no documentary evidence in support of its claim of indigency."

The closest the Mandelbaum Declaration comes to offering specific details about SNP's financial condition is the following statement: "Due to the drastic and accelerated shutdown in the economy due to the pandemic, posting a cash Bond in the required amount of $1,036,373.00 was and is not possible. [SNP] does not have any cash on hand or similar liquid assets anywhere near that value." Mandelbaum further represented that: "Were [SNP] to post a Bond in the amount identified by the Order, [SNP] would have to shut down operations during this most critical time in the global pandemic." These statements fall well short of the specificity courts require to waive a bond requirement on the basis of indigency. (See *Alshafie, supra,* 171 Cal.App.4th at pp. 431-435; accord, *Baltayan, supra,* 90 Cal.App.4th at p. 1435.) SNP offered no facts or details to support its claims of indigency in Mandelbaum's declaration. (See *Ferguson v. Keays* (1971) 4 Cal.3d 649, 658; *Alshafie,* at p. 432 [a sworn statement of hardship including financial information may be sufficient].) At best, SNP's assertions it lacked assets to pay the bond and would have to shut down are "weak and incomplete." (*Baltayan,* at p. 1435.)

Additionally, SNP did not support Mandelbaum's declaration with documentary evidence courts typically examine to assess claims of indigency, such as balance sheets, tax returns, descriptions of assets, and bank statements. (See, e.g., *Li, supra,* 53 Cal.App.5th at pp. 885-887 [holding the trial court did not err in requiring petitioner to support his request for a bond waiver with detailed information about his property, including transfers

15

of real property]; see also *Cardinal Care Management, LLC v. Afable* (2020) 47 Cal.App.5th 1011, 1022 [trial court did not abuse its discretion in denying waiver of undertaking where appellant supported claim of indigency with generalizations "he could not provide collateral for the undertaking 'without depriving myself and my dependents of the [unspecified] necessaries of life'"]; *Roberts v. Superior Court* (1968) 264 Cal.App.2d 235, 236-237 (*Roberts*) [appellant supported the waiver request with, among other evidence, two affidavits from bonding company representatives attesting appellant was indigent and could not, therefore, obtain an undertaking].)  Because Mandelbaum's declaration lacked any specific facts regarding SNP's financial condition—a deficiency that could have been cured with documentary evidence—the trial court did not abuse its discretion by rejecting SNP's claims of indigence.

The trial court's conclusion was further supported by the Department's evidence SNP and its owners had access to significant assets.  The Department presented evidence that, while the Application was pending, SNP obtained a loan from a financial institution providing direct lending to businesses.  The Department presented evidence Mandelbaum and his wife, SNP's owners, themselves had significant assets, including real property collectively worth several million dollars.  As the trial court observed, SNP did not "explain why an owner cannot be expected to use his own assets to post a bond."  And on appeal, SNP cites no authority prohibiting the trial court from considering the assets of its owners.  Regardless, several courts have looked to the assets of the party's household or close associates in deciding whether a waiver is warranted under section 995.240.  (See *Baltayan, supra,* 90 Cal.App.4th at p. 1434

16

["Appellant likewise did not address whether he or his wife had a friend or relative who would be willing to either post a cash bond or pay the premium on a surety bond."]; *Fuller v. State of California* (1969) 1 Cal.App.3d 664, 667 ["A plaintiff financially unable to post a cash bond or to pay the premium on a surety bond may, nevertheless, have friends or relatives willing and able to qualify as sureties.  Such persons might well believe in the justice of a plaintiff's claim, and be willing by their undertaking to see that the claim is prosecuted."]; cf. *Alshafie, supra,* 171 Cal.App.4th at p. 435, fn. 10 ["although information concerning the unavailability of relatives or friends to provide the resources for a bond may be of interest," plaintiff need not show "people outside his or her own household or nuclear family cannot assist in paying court fees or costs"].)

Substantial evidence also supports the trial court's finding SNP failed to satisfy the second prong of the statutory requirement:  that it could not obtain sufficient sureties.  (See § 995.240.)  Although Mandelbaum declared he contacted "multiple surety bonds and underwriting companies" and was told it would be "difficult" to obtain a bond because of the pandemic, SNP offered no details or facts, let alone documentary support for that statement.  The declaration does not, for example, identify any bond or underwriting companies SNP contacted, the dates or nature of any contact, nor does it even state SNP actually applied for a bond or undertaking and was rejected.  Without sufficient facts the trial court had no basis for accepting Mandelbaum's conclusory statements.  (See *Alshafie, supra,* 171 Cal.App.4th at pp. 431-434; accord, *Roberts, supra,* 264 Cal.App.2d at pp. 236-237 [movant submitted two affidavits of bonding company representatives that the appellant was

17

indigent and could not, therefore, obtain an undertaking]; *Baltayan, supra,* 90 Cal.App.4th at p. 1434 ["Nor did appellant or his attorney show that they had made any unsuccessful effort to obtain an undertaking. Counsel's declaration merely stated that he had 'inquired of several bond companies as to the procedure for obtaining' the required undertaking, but did not show any actual attempt to obtain it."].) Absent a more particularized showing of an unsuccessful effort to obtain a bond or surety, the trial court did not abuse its discretion in finding SNP failed to meet its burden under the second prong of section 995.240.

We also conclude the trial court did not err in its assessment of other relevant factors, including the impact the bond waiver would have on the workers who had been harmed by the violations found by the Labor Commissioner. The statute expressly allows the court to examine "all factors it deems relevant, including but not limited to" the "potential harm to the beneficiary if the provision for the bond is waived." (§ 995.240.) Moreover, contrary to SNP's steadfast assertions, the trial court expressly considered the effect of the pandemic, albeit at the hearing on its Application. The court acknowledged the effect on some business but rejected SNP's claim the pandemic prevented SNP from obtaining a bond. In light of SNP's deficient showing, the trial court's determination was not arbitrary or capricious.[6]

---

[6] As noted above, section 995.240 codifies the common law authority to waive bond requirements. To the extent SNP contends the common law separately entitles it to relief, SNP forfeited the argument by failing to provide substantive argument in support. (See *Christoff, supra,* 134 Cal.App.4th at p. 125.)

18

2. *The Trial Court Did Not Err by Dismissing the Petition After SNP Failed To Post Bond*

Finally, because the trial court did not err in denying the Application to waive the bond requirement, the court's dismissal of the Petition for failure to post the bond was also proper. (*Williams, supra,* 123 Cal.App.4th at p. 615 [trial court did not abuse its discretion in dismissing the action for failure to post the requisite bond]; cf. *Progressive Concrete, Inc. v. Parker* (2006) 136 Cal.App.4th 540, 552 [dismissal may be ordered if the trial court orders the employer to post bond and the employer fails to comply with the order].) Further, we note the trial court, over the Department's objections, gave SNP several additional weeks after it denied the Application to post bond before it dismissed the Petition. In total, SNP had almost nine months to post bond from the time it filed its Petition until the court ultimately dismissed it. SNP has failed to show any abuse of discretion or miscarriage of justice.[7]

---

[7] Because we affirm the judgment of dismissal on the merits, we need not address the Department's additional argument that SNP's delay in filing the Application deprived the trial court of jurisdiction, which, as discussed, depends on a disputed factual issue not resolved in the trial court.

19

## DISPOSITION

The judgment is affirmed.  Respondents are to recover their costs on appeal.


MARTINEZ, J.

We concur:



PERLUSS, P. J.



FEUER, J.

20