Filed 6/28/16  R.C. v. P.C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| R.C.,<br><br>  Appellant,<br><br>    v.<br><br>P.C.,<br><br>  Intervener and Respondent. | G051519<br><br>(Super. Ct. No. 12P001259)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Salvador Sarmiento, Judge.  Affirmed.

R.C., in pro. per., for Appellant.

Law Offices of Jeffrey W. Doeringer for Intervener and Respondent.

The issue in this family law case is whether the court abused its discretion by denying R.C.'s (Father) petition for legal and physical custody of his son Michael C. (Michael). Father complains the court ignored the fact his due process rights were violated over a year ago when a different trial court gave Michael's maternal grandmother, P.C. (Grandmother), sole legal and physical custody of the child as part of a domestic violence restraining order to keep Michael's drug addicted mother, H.C. (Mother), safely away from them. Father maintains it was unfair to be excluded from the proceedings that effectively terminated his parental rights. He is right on this point. The court lacked jurisdiction to adjudicate custody in favor of a non-parent in the context of a domestic violence restraining order. What is also plainly apparent is that the Orange County Department of Social Services (SSA) should have been alerted to Michael's predicament as early as 2012.

In any event, deeming the prior order void does not automatically mandate reversal of the current family law court's order subject to our review in this appeal. The family law court had before it an unusual child custody dispute between Father and Grandmother, and we cannot say it abused its discretion in awarding custody to a non-parent and monitored visitation to Father. We affirm the order.

I

*A. Introduction*

Father was represented by counsel for a short period of time in the trial court, but he is self represented on appeal. At the outset, we wish to state that his status as a party appearing in propria persona does not provide a basis for preferential consideration. Our high court has made clear that, "mere self-representation is not a ground for exceptionally lenient treatment." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984.) On the other hand, whenever possible, we do not strictly apply technical rules of procedure in a manner that deprives litigants of a hearing. (Cf. *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421, 432 ["we carefully examine a trial court order finally

2

resolving a lawsuit without permitting the case to proceed to a trial on the merits"].)  We have done our best to decipher and address each of Father's claims on appeal.

B.  *Background Facts*

Michael was born to Father and Mother in June 2011.  The parents did not marry and had a violent, tumultuous and on-and-off relationship for many years.  It is undisputed Mother has had a very difficult life.  She was raped by her father when she was 13 years old and he introduced her to drugs.  Due to her unresolved drug addiction, Mother was often homeless or in jail.

Mother lived with Grandmother for the last half of her pregnancy and the first year of Michael's life.  Father did not live with them at that time.

Grandmother was present for Michael's birth at the hospital.  She heard Father say he would take the child if Mother was not a good girl.  Mother left Grandmother's home and moved in with Father when Michael was approximately 11 months old.  Grandmother visited Michael almost every day because there was no clean water at the house to bathe him.  Grandmother would take the child to her house to clean him.

This arrangement lasted only a few months.  In August 2012, Father called Grandmother and asked her to come over and pick up Michael so that he would be safe.  Father and Mother had been fighting and the police were at the house when Grandmother arrived.  Soon thereafter, Father and Mother were evicted from the house.  Michael returned to Grandmother's house, and he has lived in her continuous care ever since.  Mother lived with them for two weeks and then started living on the streets and with friends.  Father visited Michael consistently while he lived with Grandmother.

Essentially, Grandmother has been Michael's primary caregiver since his birth.  At the time of the underlying proceeding he was three-and-one-half years old.  Because this appeal was not expedited, he will soon be five years old.

*C. Procedural History*[1]

   *1. Father's and Mother's Domestic Violence Temporary Restraining Orders Against Each Other (Case No. 12V001822)*

   On August 27, 2012, Father sought a domestic violence temporary restraining order against Mother (Case No. 12V001822). He alleged that on August 14, 2012, Mother punched him while he was holding Michael. She also burnt his face with a cigarette. Judge Glenn R. Salter granted the temporary restraining order and gave Father temporary legal and physical custody of Michael. He scheduled a hearing for September 14, 2012.

   On August 30, 2012, Mother sought a domestic violence temporary restraining order against Father (case No. 12V001822). She alleged Father stole their son on August 25 and could not adequately care for him. She claimed Father smoked marijuana and hit her while she was holding Michael. Judge Salter granted the temporary restraining order and scheduled the hearing for the same day as Father's restraining order application. Mother also sought an order to show cause (OSC) granting her sole legal and physical child custody. The court denied the motion pending the next scheduled hearing in September.

   On September 14, 2012, Commissioner Thomas H. Schulte granted Father's and Mother's temporary restraining orders. Commissioner Schulte awarded joint legal and physical custody to both parents. He ordered Mother would have parenting time beginning September 15 until the next hearing on September 17, 2012. The temporary order was scheduled to expire on that date. On September 17, the court issued a minute order stating both parties requested the OSCs regarding domestic

---

[1]    We advised the parties the court would take judicial notice, on its own motion, of the following Orange County Superior Court case Nos.: (1) 12V001822; (2) 13V002085; and (3) 12P001259. In this opinion, for ease of reference, we will refer to the Orange County Superior Court case numbers as "Case No."

violence be dismissed without prejudice. The court granted these requests and ordered off calendar the OSC regarding custody modification.

2. *Petitions for Custody and Support and Mother's Second Request for a Domestic Violence Restraining Order (Case No. 12P001259)*

Meanwhile, on September 10, 2012, Mother filed a petition for custody and support of Michael and a petition to establish a parental relationship, i.e., she was Michael's mother (Case No. 12P001259). Approximately seven months later, on April 17, 2013, Father filed a declaration stating he was a party to the proceeding to determine custody, i.e., he was Michael's father. In addition, he filed a response to Mother's petition to establish a parental relationship. He requested sole legal and physical custody of Michael and specified visitation with Mother should be restricted to when she was sober. Father also filed an OSC seeking custody and visitation. He declared Mother was homeless and addicted to methamphetamine. He stated Michael was no longer in Mother's custody and he was in danger. Mother told Father that Grandmother had beat her up and kicked her out of the house. Father stated Grandmother was a violent person and addicted to prescription drugs, and she harvested and sold marijuana at her home. He did not think she was a suitable caregiver for Michael.

A few weeks later, Mother filed a request for a domestic violence restraining order against Father. She declared there were no existing custody or visitation orders. She declared Michael came home injured after visiting Father. Mother stated Father had abused her for over six years. The court granted a temporary restraining order, granting Mother legal and physical custody until the hearing scheduled on May 15, 2013.

At the hearing, Judge Daphne Scott considered testimony from the parties and from a family court services investigator, "MK Gustinella," in a private session. The minute order stated Gustinella made several recommendations, however, our record does not contain a reporter's transcript of these proceedings. Thereafter, Mother withdrew her

5

request for a restraining order. Judge Scott denied Father's request to require that Mother start drug testing. Based on the parties' requests, Judge Scott also did not make formal parenting or custody orders.

*3. Grandmother's Domestic Violence Restraining Order Against Mother and Custody Award (Case No. 13V002085)*

On September 23, 2013, Grandmother requested a restraining order against Mother (Case No. 13V002085) to protect herself, her partner (Donald W.), her son (Anthony C.), and Michael. She alleged Mother was living in her driveway, using drugs, and urinating and defecating on the side of Anthony's car. After an eight month absence from Michael's life, Mother was taking the child to the place where she used drugs with friends. Mother assaulted Grandmother, Anthony, Donald, and the family pets. In addition to the restraining order, Grandmother requested a mental health evaluation and batterer intervention program. Commissioner Renee E. Wilson granted the restraining order and set a hearing date for October 15, 2013.

On that day, Judge Salvador Sarmiento re-issued the temporary restraining order and continued the hearing to October 31, 2013. In that order, Judge Sarmiento granted temporary legal and physical custody of Michael to Grandmother and granted Mother weekend monitored visitations lasting two hours. There was no mention of Father in the court's order or supporting documentation.

At the October 31, 2013 hearing, Judge Sarmiento determined Mother had been properly served but had not made an appearance. He proceeded to a hearing by default. After considering testimony, Judge Sarmiento determined Mother committed domestic violence against Grandmother and issued a restraining ordered scheduled to expire in October 2018.[2] The written ruling stated, "The current custody and visitation

---

[2] On December 9, 2014, Judge Sarmiento amended the restraining order. He specified Mother could telephone Michael daily, and he could call her at anytime. The order stated Mother's monitored visitation would take place at the F.A.C.E.S. facility in

6

orders shall remain in full force and effect." Again, Father was not mentioned in the court's order and it does not appear he was served with notice of the proceedings.

### 4. *Father's Second Petition for Modification of Custody and Visitation*

As discussed earlier, on April 17, 2013, Father filed an OSC regarding modification of custody and visitation in Case No. 12P001259. We found no court ruling resolving this petition. The following year, on April 10, 2014, Father filed a second request for an OSC to modify custody and visitation in Case No. 12P001259. The superior court's supervising judge determined the OSC would be removed from Judge Scott's courtroom and be assigned to Judge Sarmiento for all purposes because Judge Sarmiento was assigned to and ruled on Grandmother's related domestic violence case in October 2013.

On April 23, 2104, Judge Sarmiento held a hearing to consider Grandmother's joinder request to Father's OSC proceedings. At the hearing, Grandmother's counsel stated her client was given sole legal and physical custody of the minor in the related domestic violence case (Case No. 13V002085) and that case needed to "be consolidated" with the underlying "P" case (Case No. 12P001259). Counsel stated the family court services investigator was not aware Grandmother had custody. Counsel requested a continuance to allow Grandmother to be joined and to speak to the investigator. She noted Mother was incarcerated.

Judge Sarmiento granted the joinder request and continued the hearing to allow the investigator to interview Grandmother and Father (who had mixed up the date and missed his interview). The court provided a new referral to family court services for an emergency investigation. The matter was continued to May 12, 2014.

---

Placentia. He also added that Mother must enroll and complete parenting and drug programs.

7

The next hearing was closed to the public. Judge Sarmiento heard testimony from Father, Grandmother, and Gustinella. Next, he ordered a full child custody investigation that would include home visits. Judge Sarmiento ordered Father would have monitored visitation at F.A.C.E.S. three days a week for two hours. The court continued the matter to September 9, 2014.

Our record contains a copy of the full confidential child custody investigation. Due to the confidential nature of the information, we will merely summarize the contents. Suffice it to say, the investigator interviewed Father and advised the court of Father's many concerns about Michael's safety with Grandmother as his caregiver. The report also contained a summary of Grandmother's interview and why she believed Father was an unsuitable parent. The investigator also interviewed a family friend, Grandmother's neighbor, and Father's grandparents, with whom he resided. The investigator visited Father's and Grandmother's residences. The investigator was unable to reach Mother for an interview.

The report also included summaries of various criminal records. Father had two DUI convictions in 2002 and 2004. Father resided with his grandparents, and they did not have criminal histories. Mother had multiple drug-related convictions. Grandmother did not have a criminal history, but she resided with two individuals who were criminals. Donald had a criminal history that included several older drug-related felonies (1998 & 1990). Anthony had two pending criminal cases in which he had pleaded guilty to second degree burglary, possessing a controlled substance, and possessing drug paraphernalia.

The report contained summaries of police reports regarding domestic violence incidents between Father and Mother in 2008 and 2012. There were also multiple reports detailing Mother's drug activities and her assault and battery of third parties unrelated to the parties in this appeal.

8

The investigator reached several conclusions in her report. With respect to Grandmother, the investigator stated there was no independent information to support any of Father's concerns of child abuse or neglect. There was insufficient evidence Grandmother had a substance abuse problem. To the contrary, there was evidence Michael was being well cared for by Grandmother and was "comfortable" in her care. The investigator noted Grandmother had three pit bull mixes and a python snake in her home, but Grandmother had agreed to remove the snake and keep the dogs outside to keep Michael safe. Given Anthony's recent criminal activity, the investigator stated Michael should not be left unsupervised in his uncle's care. However, the investigator was satisfied with Grandmother's explanation that although Anthony lived in the house, he did not provide childcare. The investigator also concluded there was no evidence of medical or dental neglect. Grandmother recognized three-year-old Michael was overweight (65 pounds) and she was taking measures to help him as his doctor suggested.

The investigator found substantial evidence supported concerns about Mother's substance abuse problem but insufficient evidence to support Grandmother's allegation Father was using drugs. Father admitted he had a history of smoking marijuana but denied drinking or using methamphetamine. The report discussed the high level of parental conflict and history of domestic violence between the parents and between Grandmother and Mother.

The investigator concluded, "[Michael] has been exposed to chaos and volatility in his short life due to the domestic violence between the parents and [Mother's] drug use. Stability is especially important for the minor, given this history. [Grandmother] was granted legal and physical custody of the minor on [October 31, 2013]. It appears she has provided stability for the minor since then. There was not sufficient information to warrant a change of physical custody to [Father] . . . [and] it appears it would be in the minor's best interest for [Grandmother] to continue to have legal and physical custody of the minor. It also would be in the minor's best interest for

9

[Father] to have supervised visitation at F.A.C.E.S. until he completes a parenting education program." The investigator recommended that after Father completed his parenting class, his visitation be supervised by Father's grandparents on weekends.

On October 8, 2014, Judge Sarmiento heard testimony from the investigator and received into evidence the child custody report described above. The hearing was continued to the following day, but our record does not contain a reporter's transcript of those proceedings. The minute order indicates the court heard more testimony from the investigator and took judicial notice "of all pleadings in [superior] court cases regarding these parties" pursuant to Evidence Code section 452. This included the domestic violence reports and documents filed in [Case No.] 12V001822. The hearing was continued to November 3, 2014, when the court considered Father's testimony. On that day, Grandmother objected to Father's attempts to submit visitation report summaries from F.A.C.E.S. The court received into evidence the report and a letter confirming enrollment. Our record does not contain these documents. The matter was continued and the court heard Mother's and Grandmother's testimony on December 4 and December 8.

5. *The Family Court's Custody Ruling*

Judge Sarmiento took the matter under submission. On December 9, 2014, he issued a final ruling stating he considered Family Code sections 3020 [legislative declaration of public policy for courts to assure health, safety, and welfare of children],[3] 3011 [factors relevant to a child's best interests], and 3041 [finding of detriment before custody award to nonparent].

Judge Sarmiento made several factual findings. He concluded it was undisputed Michael had "been residing with [Grandmother] since April of 2013" and "[o]n that date, Father voluntarily left [Michael] with [Grandmother] after he was granted

_____

[3] All further statutory references are to the Family Code, unless otherwise indicated.

10

a restraining order against [Mother]."[4] The written ruling noted that in October 2013 Grandmother obtained a restraining order against Mother and was "granted a formal custody order." "The minor has resided with [Grandmother] for the past [20] months. For a [three-year-old], this is a substantial period of time. In May of 2014, [Father] was granted monitored visits with the minor. Father admitted that he did not exercise any visits with the minor until August 14, 2014, three full months later. [¶] The evidence showed that Mother had not visited [Michael] since [Grandmother] was granted a restraining order against her . . . ."

Judge Sarmiento noted Grandmother had "assumed the role of parent" and provided for all of Michael's needs. There was no evidence showing the parents assisted Grandmother in any fashion. Judge Sarmiento commented Mother had a difficult life, and he hoped she could address her issues because Michael "needs his mother." The trial judge concluded Father "showed he has a serious anger management problem" and he and Mother continue to be involved "in what can only be describe[d] as a tumultuous and dangerous relationship." Judge Sarmiento noted Father admitted he still smoked marijuana and Michael had "serious unexplained bruises" after visiting with Father. For these reasons, Judge Sarmiento determined Father's visits with Michael should be supervised. Judge Sarmiento concluded, "Based on the evidence, it is in the best interests of the minor to remain with [G]randmother and returning him to either parent would be detrimental to the minor. Court received no evidence to the contrary."

In his written order, Judge Sarmiento denied Father's request for custody and awarded Grandmother sole legal and physical custody. He awarded Mother and Father supervised visitation at F.A.C.E.S. When Father completed a parenting education

---

[4] We note the court may have made a clerical error regarding the timing of events. In April 2013 Father filed an OSC seeking custody. In August 2012 he obtained the restraining order and left Michael with Grandmother. Thus, Michael had been with Grandmother for 20 months since the OSC and 28 months since the restraining order/domestic violence incident.

11

program and anger management class, visits would be supervised by Father's parents on Saturdays and eventually for the entire weekend.

## II

The gravamen of Father's appeal is that it was unfair to take away his custody rights without notice and a hearing in 2013. He argues that because the trial court lacked jurisdiction in 2013 to award custody of Michael to a non-parent, the current custody order suffers from the same defects because it merely reaffirms the prior order. Grandmother argues it is too late for Father to challenge the 2013 order and, more importantly, that prior order arose from a different superior court case from the current custody order being appealed from. Grandmother also notes Father's appeal is fatally defective because pieces of the record are missing and Father does not do a good job supporting his argument with record citations and legal analysis. Grandmother suggests we do not have jurisdiction to consider Father's argument.

We will begin with the issues surrounding the 2013 custody order. For reasons we will now explain, we conclude the order was void because the court lacked jurisdiction to adjudicate child custody in a case involving a dispute with a non-parent. The order arose from proceedings under the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.). The DVPA defines domestic violence as "abuse" perpetrated against enumerated individuals, including a former spouse, cohabitant, "a person with whom the respondent has had a child," or anyone "related by consanguinity or affinity within the second degree," i.e., a parent. (§ 6211, subds. (d) & (f).) Its purpose is to prevent acts of such abuse and "to provide for a separation of the persons involved" for a period sufficient to enable the persons involved to resolve its underlying causes. (§ 6220.) "To this end, the DVPA provides for the issuance of restraining or 'protective' orders, either ex parte or after hearing, that enjoin specific acts of abuse." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334; Hogoboom et al., Cal. Practice Guide: Family Law (The

12

Rutter Group 2015) § 5:35, p. 5-16 (*Hogoboom*).) Under this authority, Grandmother could certainly seek help and protection from her adult child under the DVPA.

In DVPA proceedings, the court may issue other orders in addition to the restraining or protective order. Relevant to this case, "[T]he court may issue temporary custody and visitation orders *only to a party who has established a parent-child relationship* with the minor pursuant to . . . [section] 6323, [subdivision] (a)(2)(B) . . . . [T]he parties must inform the court if any custody or visitation orders have already issued in any other proceeding. [Citation.]" (*Hogoboom, supra*, § 5:98, p. 5-50; § 6323, subd. (a)(1).) The statute lists eight ways a person can establish a parent-child relationship, including evidence the party gave birth to the child or there is pending legal adoption. (§ 6323, subd. (a)(2)(B)(i)-(viii).)

A grandparent is not considered a child's parent under any of the statutory definitions. Accordingly, the court lacked jurisdiction to adjudicate a child custody dispute when the minor was not a child of one of the parties in the DVPA action. (*Polin v. Cosio* (1993) 16 Cal.App.4th 1451, 1454 [child custody order deemed void in DVPA proceedings between two sisters due to petitioners lack of parent-child relationship].)

Further support for this conclusion is found in section 6340, which authorizes the court, *after notice to the party to be restrained and a hearing*, to issue "any of the orders described" in sections 6320 through 6327 and directs the court, when determining whether to do so, to "consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom the custody or visitation orders are sought." (§ 6340, subd. (a).) Here, Grandmother only gave Mother, the party to be restrained, notice of the hearing. She did not seek to restrain Father, and she did not present any evidence at the hearing suggesting he might jeopardize the child's safety. Father was unaware of the hearing and did not make an appearance. Therefore, there was no mechanism for the court to weigh or consider Father's rights to custody or visitation in light of the evidence Michael (living with Grandmother) required a

13

restraining order against Mother. Rather than awarding a non-parent full custody of the child, SSA should have been alerted to the need for an investigation and determination if Michael had a second parent in his life. It is well established that parents "have a constitutional right to due process of law before the state may interfere with their parental rights. [Citation.]" (*H.S. v. N.S.* (2009) 173 Cal.App.4th 1131, 1138 (*H.S.*).)

And finally, we found many cases reviewing court orders regarding minors having a parent-child relationship with both parties in the DVPA proceedings, awarding custody to the non-offending parent to protect the child. (See e.g., *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 416.) Not surprisingly, there are no cases (published or unpublished) reviewing a court's custody award to a non-parent in DVPA proceedings.

Contrary to Grandmother's contention on appeal, it was not too late for Father to challenge the validity of the original 2013 custody award. When a court lacks jurisdiction in a fundamental sense, an ensuing judgment is void, and ""'"thus vulnerable to direct or collateral attack at any time." [Citation.]' [Citation.]" (*Lee v. An* (2008) 168 Cal.App.4th 558, 563-564; *Valenta v. Regents of University of California* (1991) 231 Cal.App.3d 1465, 1469, fn. 2 ["It is axiomatic that a judgment entered by a court which lacked jurisdiction is void and must be reversed"].)

Unfortunately, this is a hollow victory for Father. It is clear from Father's briefing that he does not understand that prevailing on the above issue is not dispositive of the entire appeal and does not, standing alone, justify a reversal. In other words, declaring the 2013 custody order void does not automatically render void the most recent custody order. Father had the burden of proving the court abused its discretion in awarding custody to Grandmother in December 2014. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 ["standard of appellate review of custody and visitation orders is the deferential abuse of discretion test"] (*Burgess*)." He failed to do so.

We have carefully reviewed the record and it is important to note Judge Sarmiento properly considered the matter as involving an initial custody/visitation order

14

rather than a request for reconsideration or change in custody. The latter proceeding involves a more difficult burden of proof than what is required for a parent seeking an initial order of custody. (*Burgess, supra,* 13 Cal.4th at p. 37 [after initial custody determination noncustodial parent must show there has been substantial change of circumstances affecting child's welfare and requiring modification].)

It cannot be said the court abused its discretion in awarding Grandmother custody of Michael after holding a five-day hearing to consider Father's OSC. "In an initial custody determination, the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child." (§ 3040, subd. (b).) It must look to *all the circumstances* bearing on the best interest of the minor child. [Citation.] [S]ection 3011 lists specific factors, "among others," that the trial court must consider in determining the "best interest" of the child in a proceeding to determine custody and visitation: '(a) The health, safety, and welfare of the child. [¶] (b) Any history of abuse by one parent against the child or against the other parent . . . . [¶] (c) The nature and amount of contact with both parents." (*Burgess, supra,* 13 Cal.4th at pp. 31-32.)

As to the order of preference in awarding custody, section 3040 states in pertinent part: "(a) Custody should be granted in the following order of preference according to the best interest of the child as provided in [s]ections 3011 and 3020: [¶] (1) To both parents jointly . . . or to either parent. . . . [¶] (2) If to neither parent, to the person or persons in whose home the child has been living in a wholesome and stable environment. [¶] (3) To any other person or persons deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child. [¶] . . . [¶] (c) This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but allows the court and the family the widest discretion to choose a parenting plan that is in the best interest of the child."

In making his ruling, Judge Sarmiento mentioned section 3011 (used for initial custody determinations) and section 3041. "Section 3041 provides that before

15

granting custody of a child to a nonparent over the objection of a parent, the court must find that custody to a parent would be detrimental to the child and that custody to the nonparent is in the best interest of the child. (§ 3041, subd. (a).) The finding of detriment must be supported by clear and convincing evidence, but it does not require a showing of parental unfitness. (§ 3041, subds. (b), (c).) Section 3041 further provides that if a preponderance of the evidence shows a nonparent has assumed the parental role for a substantial period of time by providing a stable home where the child's physical and emotional needs are met (i.e., a de facto parent), this establishes the required showing that nonparental custody is in the best interest of the child and that parental custody would be detrimental. (§ 3041, subds. (c), (d).) However, a parent may refute the evidence supporting custody with a de facto parent by showing by a preponderance of the evidence that there would be no detriment from parental custody and that nonparental custody is not required to serve the best interest of the child. (§ 3041, subd. (d).)" (*H.S., supra*, 173 Cal.App.4th at p. 1137, fn. omitted.)

Accordingly, our role in reviewing the ruling for abuse of discretion is to determine whether the court "could have reasonably concluded that the order in question advanced the 'best interest' of the child." (*Burgess, supra*, 13 Cal.4th at p. 32.) We conclude the court reasonably determined based on the evidence presented that Grandmother was a suitable caregiver and "able to provide adequate and proper care and guidance" (§ 3040, subd. (a)(3)), for Michael. She has been the primary caretaker and parental figure since Michael's birth, and they share a loving relationship. Although we have some concerns about the individuals residing with Michael and Grandmother, the court could reasonably rely on the family court investigator's opinion Grandmother would keep Michael safe and that she has provided a stable environment in the past.

The court also had ample evidence to support its finding that parental custody would be detrimental to Michael. The court determined there was evidence to support concerns about Father's domestic violence, marijuana usage, and anger

16

management issues.  Michael sustained serious bruising while in Father's care and in the limited record before us, there was nothing to explain the injuries.  Accordingly, the court's concerns about Father's parenting skills and anger management issues were well founded by the evidence presented.  Like the trial court, we find it significant that Father waited three months for no apparent reason before starting monitored visits with Michael.  This evidence suggests not only poor parenting skills but also a weak bond to his son.

III

The order is affirmed.  In the interests of justice, both sides shall bear their costs of appeal.

O'LEARY, P. J.

WE CONCUR:

FYBEL, J.

IKOLA, J.

17