Filed 4/20/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CARDINAL CARE MANAGEMENT, LLC et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>EDGARDO AFABLE et al.,<br><br>        Defendants and Respondents. | A154062, A155229<br><br>(Contra Costa County<br>Super. Ct. No. N180119) |

Appellants operate several residential care facilities for the elderly. Respondents are seven former employees who worked at the facilities, and who brought administrative proceedings against appellants before the Labor Commissioner (the Commissioner) seeking unpaid wages and penalties. When the Commissioner awarded the employees more than $2.5 million, appellants sought de novo review in the trial court, an action that required them to post an undertaking in the amount of the award or to obtain a waiver. (Lab. Code, § 98.2;[1] Code Civ. Proc., § 995.240.) The primary question we must address is whether the trial court provided an adequate hearing on appellants' financial ability to post the undertaking. We conclude the proceedings were adequate and comported with due process, and accordingly affirm the trial court's dismissal of the consolidated trial court

---

[1] All undesignated statutory references are to the Labor Code.

1

actions.  Appellants also challenge an award of attorney fees, which we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondents Edgardo Antonio Afable, Ma Christina Milan, Jennifer Panopio, Alexander Ranoco, Dennielain Ranoco, Francis Sobremonte, and Rosalina Sumile each filed claims with the Commissioner's office seeking unpaid overtime wages, liquidated damages (§ 1194.2), and waiting time penalties (§ 203), and a hearing on their claims was held before a hearing officer.

Appellants Cardinal Care Management, LLC (Cardinal Care) and Welcome Home Senior Residence LLC (Welcome Home) operated several licensed residential care facilities for the elderly.  Both entities had a sole member, appellant Steve Chou.  Appellants employed respondents either as live-in caregivers or as relief caregivers.  The hearing officer found appellants failed to pay respondents for all of the time they worked and, as to each appellant, awarded overtime wages, liquidated damages, interest, and waiting time penalties.  The combined amount of the seven awards was more than $2.5 million.  Cardinal Care and Welcome Home were found liable for all of this amount.  With Chou individually liable for all or a portion of each of the awards, his liability came to more than $2.2 million.

Appellants sought to appeal the Commissioner's award to the trial court.  (§ 98.2.)  The clerk of the superior court refused to file the notices of appeal, but permitted appellants to file petitions for relief from the requirement that they first post an undertaking in the amount of the award.  (§ 98.2, subd. (b).)  The trial court later allowed appellants to file their

2

appeals conditionally, subject to being stricken if their petition to waive the bond requirement was denied. The actions were consolidated.[2]

In support of appellants' motion for relief from the requirement to post an undertaking, Chou submitted a declaration stating that he, Cardinal Care, and Welcome Home lacked the financial ability to pay the awards or to deposit the amount of the awards with the court; that he had contacted two bonding companies, which had informed him they would not provide a bond unless he provided collateral for the amount of the bond sum; and that neither he, Cardinal Care, Welcome Home, nor the three collectively, could provide security in that amount. Chou also stated he was willing to provide copies of his, Cardinal Care's, and Welcome Home's financial statements, for the court's in camera review. Appellants' attorney submitted a declaration stating on information and belief that Chou was "in the process of rebuilding his life after a bankruptcy and divorce. He owns no real property, and has no income other than that of his businesses, both of which have significant expenses."

In their turn, respondents argued Chou had made no showing he was indigent, and provided evidence that, while the administrative action was pending, Chou had transferred title to four residential care facilities, as well as another property, from his own name to that of certain trusts and limited liability companies of which Chou's wife was the sole manager; that Chou and his wife were governors of a Washington State corporation that operated a 50-bed assisted-living facility; and that Chou was the sole manager of a limited liability company that was the licensee of another Welcome Home senior residence. They also provided evidence that the value of the four

[2] Specifically, trial court cases No. N18-0119, N18-0120, N18-0121, N18-0127, N18-0128, N18-0129, N18-0130 were consolidated, with case No. N18-0119 the lead case.

3

residential care properties Chou had recently transferred collectively exceeded five million dollars, according to the Internet site Zillow, and that the fifth property had been purchased in April 2015 for $1,050,000.

In reply, appellants reiterated their willingness to provide documents for the court's review in camera and asserted that Chou and his wife were involved in divorce proceedings. Chou did not deny that he transferred the properties, but averred that each of the properties had a mortgage debt and that the properties were transferred "as part of an estate plan to clarify the rights and interests of the respective businesses" managed by Chou, not as part of an effort to hide his assets; that he had no family member or friend willing and able to provide a bond or collateralize an undertaking; that he was unable to provide collateral for an undertaking without depriving himself and his dependents of the necessities of life; that neither he, Cardinal Care, nor Welcome Home owned any real property or personal property sufficient to provide collateral for a bond; that he had no ownership interest in the corporations that owned the transferred properties; and that the award would bring financial ruin to himself, Welcome Home, and Cardinal Care, and could accordingly disrupt services to the elderly residents of the senior care facilities.

Chou was not present at the hearing on the motion to waive the undertaking requirement, nor did his counsel explain his absence. The trial court stated that there were no witnesses to conduct an in camera showing of appellants' financial position, and that, in any case, appellants had not shown why any hearing should be conducted in camera. The court also found not credible Chou's assertions that he transferred the corporations out of his own control for estate planning purposes and that he was unable to post a bond, finding the transfers "transparently an effort to avoid a judgment."

4

Appellants' attorney said she had a declaration that Chou had signed, which included his tax returns and profit-and-loss statements, and that she could probably arrange for Chou to come to court that day and testify about the documents, an offer the court found untimely. The trial court denied appellants' request for a waiver of the requirement of an undertaking and dismissed their appeals from the Commissioner's award.

## DISCUSSION

### I. Fair Hearing on Waiver of Undertaking

*A. Statutory Framework*

When an employer does not pay wages as required by law, an employee may file either a civil action in court or a wage claim with the Commissioner. (§§ 98-98.8.) If the employee chooses the administrative route, a deputy commissioner then holds a hearing commonly known as a "Berman" hearing. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 121 (*OTO*).) The Berman procedure " 'is designed to provide a speedy, informal, and affordable method of resolving wage claims.' " (*Ibid.*)

Within ten days after service of notice of the Commissioner's order, decision, or award, either party may appeal to the superior court, which considers the matter de novo. (§ 98.2, subd. (a); *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1116-1117 [section 98.2 proceeding is not conventional appeal or review of Commissioner's decision, but review de novo of wage dispute].) As a condition to filing an appeal, an employer must first post an undertaking in the amount of the award, in the form of either an appeal bond or a cash deposit. (§ 98.2, subd. (b).) This requirement discourages unmeritorious appeals and minimizes the time for an employer to divest itself of assets in order to deprive the employee of the possibility of

5

enforcing the award.  (*Palagin v. Paniagua Construction, Inc.* (2013) 222 Cal.App.4th 124, 137 (*Palagin*); *OTO*, *supra*, 8 Cal.5th at p. 123.)

An escape valve exists for employers who are unable to post the necessary security:  "[A] party appealing a decision of the Commissioner is entitled as a matter of due process to seek relief from the section 98.2(b) undertaking requirement.  'The right of an indigent civil litigant to proceed in forma pauperis is grounded in a common law right of access to the courts and constitutional principles of due process.  [Citations.]  "[R]estricting an indigent's access to the courts because of his poverty . . . contravenes the fundamental notions of equality and fairness which since the earliest days of the common law have found expression in a right to proceed in forma pauperis." ' " (*Burkes v. Robertson* (2018) 26 Cal.App.5th 334, 343-344 (*Burkes*).)  Thus, statutory provisions applying to all bonds include an exception for indigency.  (*Williams v. Freedomcard, Inc.* (2004) 123 Cal.App.4th 609, 614 (*Williams*).)  Specifically, Code of Civil Procedure section 995.240 provides that a court "may, in its discretion, waive a provision for a bond in an action or proceeding . . . if the court determines that the principal is unable to give the bond because the principal is indigent and is unable to obtain sufficient sureties."

*Burkes* and *Williams* make clear that this exception applies to the undertaking required by section 98.2.  We accordingly reject respondents' suggestion that a bond waiver is not available in an appeal from a decision in a Berman proceeding, and turn to appellants' arguments that they were deprived of sufficient opportunity to obtain such a waiver.

### B.  Abuse of Discretion Challenge

Appellants contend the trial court abused its discretion by failing to provide an adequate hearing on their financial ability to post an undertaking,

before it denied their request for a waiver of this requirement. We are unpersuaded. The party seeking relief from the requirement for a bond or undertaking has the burden of proof to show entitlement to relief. (*Williams*, *supra*, 123 Cal.App.4th at p. 614.) The trial court could properly find appellants did not meet their burden to show they were indigent and deserving of a waiver. (See *Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1433 (*Baltayan*).)

In support of their request, appellants provided no details of their financial situation. Instead, they averred that they lacked financial ability to post the undertaking, that they owned no real property, and that Chou's only income was from the businesses. Confronted with evidence that Chou had transferred several properties to entities controlled by his wife, appellants stated in reply that the properties were encumbered by mortgages and that they had been transferred for the purpose of estate planning; but he provided no information about the amount of equity he had in each of the properties, nor about the provisions of the so-called estate plan he cited as justification for the transfers.

In considering whether to waive an undertaking, the court considers "all factors it deems relevant, including but not limited to *the character of the action or proceeding*, the nature of the beneficiary, whether public or private, and the potential harm to the beneficiary if the provision for the bond is waived." (Code Civ. Proc., § 995.240, italics added.) Applying these standards, it was not an abuse of discretion to reject appellants' showing of indigency. The court found appellants' opening papers "barely qualif[ied] as conclusory," in that there was "no specification of any detail, any facts, any reasons why, any anything." The record supports this conclusion. Although appellants offered a review of their financial records in camera and

7

apparently had available at the hearing a declaration that included tax returns and profit and loss statements, Chou himself was not present at the hearing to submit to cross-examination on the statements. The record shows no attempt before the hearing to submit the documents to the court, even under seal, nor to provide them to opposing counsel for review. It is no abuse of discretion to deny relief from an undertaking where, as here, a litigant has made only a "weak and incomplete showing of indigency." (See *Baltayan, supra*, 90 Cal.App.4th at p. 1435.)

Equally important, a purpose of the undertaking requirement is to prevent employers from divesting themselves of assets to deprive the employee of the possibility of enforcement. (*Palagin, supra*, 222 Cal.App.4th at p. 137.) And it is crystal clear that the trial court believed Chou had begun to do precisely that during the pendency of the administrative action. It rejected Chou's explanation that he transferred the properties—with a combined value of more than $5 million—for purposes of estate planning, finding that explanation "pretty transparent" and "facially not credible," and concluding the transfers were made to preserve the properties from the claims of a future judgment creditor. Appellants offered nothing to rebut the trial court's conclusion that "[i]t is not plausible that he has simply given away these properties in a way that he cannot possibly get them back."

Appellants argue that *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421 (*Alshafie*) compels a different conclusion. The plaintiff in *Alshafie* brought a medical malpractice action based on his child's severe injuries incurred during birth. (*Id.* at pp. 424-425, 426.) The defendants sought an order requiring plaintiff, as an out-of-state resident, to post an undertaking to secure an award of costs pursuant to Code of Civil Procedure section 1030. (*Id.* at pp. 426-427.) In opposition to the motion, the plaintiff submitted a

8

declaration asserting he could not afford to post an undertaking: his family lived in a rented apartment; he was a tow truck dispatch manager; his wife did not work outside the home because she took care of the couple's three children, including the injured child, who could not speak, walk, feed herself, or care for herself; and he had no tangible assets with which to secure a bond. (*Id*. at pp. 426-427.) The trial court granted the motion for an undertaking, and the defendants moved to dismiss the action. (*Id*. at p. 427.) In opposition to the motion to dismiss, the plaintiff presented more specific information about his financial position, including the family's annual income, the amount of their rent and savings, and the value of their vehicles. (*Id*. at p. 427.) The trial court dismissed the action, finding the plaintiff's showing of indigency remained inadequate. (*Id*. at p. 428.)

The appellate court concluded this was an abuse of discretion. The court noted that a plaintiff seeking relief from a bond requirement would be "well advised to provide the information requested in the mandatory Judicial Council form for applying for in forma pauperis status"—including all sources of income, interests in property, and monthly expenses. (*Alshafie, supra*, 171 Cal.App.4th at pp. 434-435.) Then, "to fulfill its statutory duties when exercising its discretion, the court must review the plaintiff's showing, identify deficiencies, if any, and give the plaintiff the opportunity to supply additional information that may be necessary to establish his or her entitlement to a waiver under the circumstances of the particular case." (*Id*. at p. 435.) "In sum," the court concluded, "because the [trial] court failed to provide a meaningful opportunity for [the plaintiff] to demonstrate his financial inability to post an undertaking and to address the court's concerns about the showing he had made," the orders requiring an undertaking and dismissing the action must be reversed. (*Id*. at p. 436.)

9

Appellants argue the trial court here should likewise have informed them of the deficiencies in their showing and allowed them to provide additional information addressing the court's concerns. But *Alshafie* is readily distinguishable from the case before us. First, the effect of the undertaking requirement in *Alshafie* was to deprive the plaintiff entirely of the opportunity to recover for the injuries caused by a child's devastating injuries. Here, in contrast, appellants have already had an opportunity to make their case during the administrative proceedings. As explained in *Palagain*, "[t]he primary process for deciding wage claims is *not* the trial de novo reflected in section 98.2, but the administrative procedure reflected in section 98." (*Palagin*, *supra*, 222 Cal.App.4th at p. 138; accord, *Burkes*, *supra*, 26 Cal.App.5th at p. 347.) Second, the " 'overriding goal' " of section 98.2's undertaking requirement is to "ensur[e] expeditious collection of wages which are due but unpaid," including by minimizing the time for employers to hide assets to prevent employees from collecting their awards. (*Burkes*, at p. 346.) The trial court here concluded Chou had *already* transferred substantial assets for the purpose of impeding collection on a judgment, a concern that did not exist in *Alshafie*. And third, the *Alshafie* plaintiff provided detailed information quantifying his limited income and assets, while Chou provided almost no information about his considerably greater financial interests. Where the *Alshafie* plaintiff provided details like the family's monthly rent and the value of their personal vehicles, appellant Chou baldly generalized that he could not provide collateral for the undertaking "without depriving myself and my dependents of the [unspecified] necessaries of life." On the facts before us, there was no abuse of discretion in denying appellants a waiver of the undertaking requirement

without reviewing the documents they offered for the first time at the hearing, and only for in camera review.

### C. Due Process Challenge

Appellants next argue that the administrative hearing and the requirement of an undertaking deprived them of procedural and substantive due process.

Procedural " '[d]ue process principles require reasonable notice and opportunity to be heard before governmental deprivation of a significant property interest.' [Citations.] 'However, there is no precise manner of hearing which must be afforded; rather the particular interests at issue must be considered in determining what kind of hearing is appropriate. A formal hearing, with full rights of confrontation and cross-examination is not necessarily required.' " (*Mohilef v. Janovici* (1996) 51 Cal.App.4th 267, 286.) In deciding whether due process has been satisfied, a court considers the private interest that will be affected by the official action, the risk of erroneous deprivation of that interest, the interest in informing individuals of the nature of the proceeding and enabling them to present their case to a governmental official, and the governmental interest. (*Id.* at p. 287.) In the statutory scheme before us, the Berman hearing is informal, while an ensuing appeal to the trial court carries with it "full due process protections." (*Corrales v. Bradstreet* (2007) 153 Cal.App.4th 33, 60.)

Appellants contend they did not receive procedural due process because the rules of evidence were not applied at the Berman hearing and, due to the undertaking requirement, they were unable to have the trial court reconsider the Commissioner's decision. They also argue that in this case—where respondents were fed and housed during their employment and received what

11

appellants characterize as a "massive windfall" in the Commissioner's awards—appellants' rights must outweigh those of their former employees.

We reject these contentions. First, it is appellants' burden to show error on appeal (*Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 512), and they have not provided a record of the Berman hearing that would allow us to evaluate what occurred at the hearing. Because "[t]he primary process for deciding wage claims is . . . the administrative procedure reflected in section 98," appellants cannot succeed with a procedural due process claim that ignores the particulars of the process provided in that administrative hearing. (*Palagin, supra*, 222 Cal.App.4th at p. 138 ["even if the jurisdictional undertaking requirement did affect the availability of the *trial de novo* process for employers, by no means does it deprive the employer of a full and fair opportunity to be heard on the employee's wage claim"]; *Burkes, supra*, 26 Cal.App.5th at p. 347 [same].) Second, we cannot accept appellants' characterization of these awards as a "massive windfall," as that assumes a view of the merits that is, at best, premature. Third, appellants were given an opportunity to introduce evidence and have a hearing on the issue of whether section 98.2's undertaking requirement should be waived, and they failed to produce evidence sufficient to warrant waiver. It is no violation of due process to refuse them a second opportunity to introduce evidence in support of their motion, just because they failed to make the necessary showing the first time.

Appellants also argue they were deprived of substantive due process because the government's conduct " 'shocks the conscience' " and "interferes with rights 'implicit in the concept of ordered liberty.' " (*United States v. Salerno* (1987) 481 U.S. 739, 746.) Specifically, appellants challenge (1) a legal error made by the Commissioner in making Chou individually liable for

12

the awards, and (2) section 98.2's prohibitive requirement that a small business procure a large bond in only 10 days in order to secure review in the trial court.

We reject these arguments as well. First, it would be inappropriate here to decide whether the Commissioner erred in holding Chou individually liable, for to address the merits of appellants' challenge to the Commissioner's ruling would be tantamount to relieving appellants of the requirement that they post a bond to appeal that ruling. (See *Williams*, *supra*, 123 Cal.App.4th at p. 614.) Second, we reject appellants' suggestion that the limited 10-day time period for obtaining an undertaking deprived them of substantive due process. Our colleagues in *Burkes* rejected a similar argument, concluding there was no showing of undue burden where a self-represented litigant knew of the requirement for an undertaking and its time limit. (*Burkes*, *supra*, 26 Cal.App.5th at p. 345.) Appellants here had the opportunity to persuade the court to waive the bond requirement, and for the same reasons it was no abuse of the court's discretion to deny their waiver request, it was also no violation of substantive due process.

Whatever the merits of appellants' challenge to the Commissioner's ruling, section 98.2 required appellants either to post an undertaking or to show they were entitled to a waiver of the undertaking requirement before proceeding in the superior court. They failed to do either. We must, therefore, affirm the judgment of dismissal.

## II. Attorney Fees

Respondents moved for attorney fees pursuant to section 98.2, subdivision (c), and the trial court awarded fees of $16,700. Appellants challenge this award on the ground they were not unsuccessful in the trial court for purposes of the governing statute.

13

Section 98.2, subdivision (c) provides:  "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal.  An employee is successful if the court awards an amount greater than zero."  This is not a standard prevailing party attorney-fee provision, but rather " 'a one-way fee-shifting scheme that penalizes an unsuccessful party who appeals the commissioner's decision.' [Citation.]  Its purpose is to 'act[] as a disincentive to appeal the commissioner's decision' [citation] and to 'discourag[e] unmeritorious appeals of wage claims'" (*Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, 894, italics omitted; accord *Lolley v. Campbell* (2002) 28 Cal.4th 367, 376.)  The normal standard of review of an attorney fee award is abuse of discretion, but we review the award de novo where the availability of fees hinges on an issue of statutory construction. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.)

Resolution of appellants' challenge depends on an analysis of two appellate decisions, *Arias v. Kardoulias* (2012) 207 Cal.App.4th 1429 (*Arias*) and *Arneson v. Royal Pacific Funding Corp.* (2015) 239 Cal.App.4th 1275 (*Arneson*), which point in different directions but are not irreconcilable.

In *Arias*, an employee filed an untimely appeal of a commissioner's award after a Berman hearing.  The case was dismissed for being untimely, and the trial court awarded attorney fees against the employee under section 98.2 subdivision (c).  (*Arias*, *supra*, 207 Cal.App.4th at p. 1433.)  The appellate court considered whether "the Legislature intended . . . an employer to recover attorney fees and costs when the superior court dismisses an employee's appeal for lack of subject matter jurisdiction" (*id*. at p. 1436), and concluded it did not.  In these circumstances, the court ruled, the

attorney fee provision "does not become operative unless the superior court has jurisdiction to conduct a trial on the merits of the employee's wage claim." (*Id*. at p. 1433.)  That is, "[a] dismissal of the appeal from the commissioner's decision on jurisdictional grounds is not the equivalent of the superior court's determination, after conducting a trial de novo, that the employee is entitled to 'zero' "; rather, the employer remains liable for the amount of the original award.  (*Id*. at p. 1438.)  The appellate court therefore held that the attorney fee provision of section 98.2, subdivision (c) "does not become operative against an employee unless the employee has a new trial in the superior court on the wage claim."  (*Id*. at pp. 1438-1439.)

Although some of the language in *Arias* may be read to apply to both employers and employees whose appeals are dismissed without a trial de novo, the court's holding is limited to appeals by *employees*, and its reasoning is based in significant part on an asymmetry in the statute:  that an employee who receives an award of more than zero is considered successful on appeal even if the trial court awards less than the employee received in the administrative proceedings.  (§ 98.2, subd. (c).)  This is a fee-shifting scheme that overtly favors employees.  (*OTO, supra*, 8 Cal.5th at p. 123.)  The court in *Arneson,* on the other hand, was faced with an appeal to the superior court by the *employer*, and reached a different conclusion.

The employee in *Arneson* filed a wage claim with the Commissioner and obtained an award of $29,500, after which the employer filed an appeal with the superior court and a bond guaranteeing the award.  (*Arneson*, *supra*, 239 Cal.App.4th at p. 1277.)  After a pretrial conference in which the employee's attorney indicated she might present additional claims, the employer withdrew its appeal.  (*Ibid*.)  The employee then moved for attorney fees, and, based on *Arias*, the trial court denied the motion.  (*Id*. at pp. 1277-

15

1278.)  The appellate court reversed, even though there had been no court award on the merits.  (*Id*. at pp. 1279, 1281.)  It reasoned that, when the Legislature amended section 98.2, subdivision (c) to specify that an employee is successful in the appeal if the superior court awards any amount greater than zero, the Legislature "never intended to give *employers* a chance to whipsaw employees by filing section 98.2 appeals and then withdrawing them"; such a reading would "incentivize[] *employers* to file frivolous appeals and then withdraw them at the last minute so as to inflict gratuitous legal costs on an employee who has been otherwise successful at the Labor Commissioner level."  (*Id*. at p. 1280, fn. omitted.)  *Arneson* concluded that the employee was "successful" under subdivision (c) when the employer withdrew its appeal because "[t]he employee gets to keep the money he or she won at the administrative level as if the employee had completely prevailed in a court trial."  (*Id*. at p. 1280)

The case before us is not precisely the same as either *Arias* or *Arneson,* but the reasoning of these cases leads us to conclude that respondents were entitled to their attorney fees.  This is an appeal by employers that was dismissed, not on their request as in *Arneson*, but on their failure to post an undertaking or obtain a waiver.  That distinction is not material.  As in *Arneson*, the Commissioner awarded respondents unpaid wages and other amounts, and appellants filed an appeal in the superior court.  At the end of the trial court proceedings, respondents remained entitled to the original Commissioner's award.  They were accordingly successful in the appeal, and are entitled to attorney fees.

Against this conclusion, appellants argue that dismissal here, as in *Arias*, was based on procedural and jurisdictional grounds, not on the merits, rendering attorney fees unavailable.  (See *Palagin*, *supra*, 222 Cal.App.4th at

16

p 132 [posting an undertaking is a condition to filing a notice of appeal, hence " 'jurisdictional' "].)  We are unpersuaded.  *Burkes* makes clear that an employer may proceed with an appeal by filing an application for relief from the undertaking requirement within the period for filing a notice of appeal, as appellants did here.  The fact that the appeal was later dismissed due to appellants' failure to obtain a waiver does not change the facts that appellants appealed to the trial court and respondents remained entitled to an amount greater than zero after the trial court proceedings.

Appellants point out that the notices of appeal were filed only conditionally, subject to being stricken if appellants failed to obtain a waiver of the undertaking requirement.  They argue that to the extent the waiver was properly denied, the trial court thereafter lacked jurisdiction to hear the appeal.  The facts remain, however, that the notices of appeal were filed, the trial court thereafter exercised its jurisdiction to determine whether the appeal could proceed, and the outcome was that the appeal was dismissed and respondents retained the Commissioner's award.  Under these facts, the reasoning of *Arneson* leads us to conclude respondents were entitled to attorney fees under section 98.2, subdivision (c).

## DISPOSITION

The judgment and attorney fee order in the consolidated actions are affirmed.  Appellants are to pay costs on appeal.

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
STREETER, J.


*Cardinal Care Management, LLC et al .v. Afable* (A154062, A155229)

18

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Charles S. Treat |
| Counsel for Appellants: | Ferber Law, APC, Michelle R. Ferber, Jonathan R. Babione, Jennifer R. Lucas |
| Counsel for Respondents: | Law Offices of Allan A. Villanueva, Allan A. Villanueva |